EAGLE LEASING d/b/a Budget Rent-A-Car of Marietta/Parkersburg, et al., Appellee,

v.

Eldon D. AMANDUS, Defendant,

and

Jerry Watters, Appellant.

No. 90–694.

Supreme Court of Iowa.

Sept. 18, 1991.

James R. Cook, Des Moines, for appellant.

Mary S. Bernabe of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal concerns the enforcement of a foreign judgment registered in Iowa in accordance with Iowa Code chapter 626A (1989). The appellant challenges the district court's refusal to set aside the judgment. We affirm.

I. *Scope of review.* The record on appeal consists of the pleadings filed in a West Virginia proceeding against Jerry Watters, an Iowa resident; written admissions by Watters' counsel concerning his client's participation in the underlying controversy; the West Virginia court's findings of fact, conclusions of law, and judgment entry; the Warren County Clerk of Court's "Notice of Foreign Judgment"; Watters' "Application to Set Aside Foreign Judgment and Application for New Trial"; plaintiff Eagle Leasing's resistance; and the district court's ruling. Our review is for the correction of errors at law. Iowa R.App.P. 4.

II. *Background facts and proceedings.* The record reveals that plaintiff Eagle Leasing (d/b/a Budget Rent-A-Car) sued Jerry Watters in West Virginia for intentional and malicious damage to a leased 4-door Lincoln Town Car. Service of original notice was upon the Secretary of State of West Virginia in accordance with that state's long arm statute. *See* W.Va.Code Ann. § 56-3-33. The Secretary of State then notified Watters by certified mail of the pending litigation.

Watters neither appeared nor answered. His attorney did, however, communicate with opposing counsel regarding settlement. In a letter dated January 5, 1988, counsel conceded that "Mr. Watters was driving the vehicle and Mr. Watters is the one who damaged the vehicle."

A judge for the Circuit Court of Wood County, West Virginia, subsequently rendered default judgment against Watters for $17,500, an amount less than the damages sought by Eagle Leasing in its petition. In its ruling, the court found that it had personal jurisdiction over the defendant by virtue of substituted service in accordance with the state's long arm statute. The court further found that Watters intentionally damaged the leased vehicle in the parking lot of the Holiday Inn in Parkersburg, West Virginia, by "racing it, crashing it into other cars, some of which were other rentals, and spinning the tires at excessive speeds." Regarding plaintiff's claim for punitive damages, the court noted evidence of Watters' consumption of alcohol in connection with the incident. He also reportedly bragged about his reckless conduct to an Eagle Leasing employee when he returned the car. Based on the cost of repairing damage to the vehicle's tires, trunk, left rear quarter panel and right front bumper, the loss of rentals during the repair period, and Watters' willful disregard for the property of others, the court entered judgment against him for $7500 actual and $10,000 punitive damages.

Eagle Leasing filed this judgment with the clerk of court for Warren County, Iowa (Watters' county of residence) in accordance with Iowa Code section 626A.2. Watters then petitioned the district court to set it aside. He urged the invalidity of the judgment on a number of general theories, principally lack of personal service or juris-

diction and failure of proof that the cause of action arose out of the operation of a motor vehicle. The district court found no merit in any of Watters' contentions, and refused to set aside the judgment or grant Watters a new trial in Iowa. It is from this ruling that Watters appeals.

■ III. *Appellant's attack on the jurisdiction of the West Virginia court.* Several fundamental principles guide our decision to affirm the district court. Article IV, section 1 of the United States Constitution requires the courts of each state to give "full faith and credit" to out-of-state judgments entered in accordance with recognized principles of due process. *Nevada v. Hall,* 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416, 425 (1979); *National Equip. Rental, Ltd. v. Estherville Ford, Inc.,* 313 N.W.2d 538, 541 (Iowa 1981). Among the primary due process concerns of interstate litigation is proof of sufficient minimum contacts between the forum state and the defendant to justify the court's personal jurisdiction. *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132, 141 (1978); *see also International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Because a state's power to regulate motor vehicle usage extends to nonresident as well as resident drivers, it has long been held that motorists who avail themselves of the privilege of driving in a "foreign" state may, consistent with due process, be subject to "long arm" statutes that confer jurisdiction upon the courts of a state in which an accident or injury occurs. *Hess v. Pawloski,* 274 U.S. 352, 355, 47 S.Ct. 632, 633, 71 L.Ed. 1091, 1094–95 (1927); *accord Rosenblatt v. American Cyanamid Co.,* 86 S.Ct. 1, 3–4, 15 L.Ed.2d 39, 43 (1965).

The law upon which the West Virginia court rested its personal jurisdiction over Watters is just such a "long arm" statute. Section 56–3–33(a) of the West Virginia Code Annotated provides that the "engaging" by a nonresident in one or more specified acts "shall be deemed equivalent to an appointment by such nonresident" of the West Virginia Secretary of State as his "true and lawful attorney upon whom may be served all lawful process in any action or proceeding...." Among the specific acts covered by the statute are the ones upon which Eagle Leasing's claims rest, namely, transacting business in the state and causing tortious injury by act or omission within the state. W.Va.Code Ann. 56–3–33(a)(1), (3). Finally, the statute provides for certified or registered mail service to the nonresident through the Secretary of State and directs that such process "shall be of the same legal force and validity *as though such nonresident were personally served with a summons and complaint within this State ....*" W.Va.Code Ann. 56–3–33(a) (emphasis added).

We note that this statutory scheme is nearly identical to Iowa's own long arm statute. *See* Iowa Code § 617.3. Like the West Virginia statute, section 617.3 confers upon the Secretary of State the authority to accept service of process on behalf of any nonresident who commits a tort against an Iowa resident in this state. The commission of such a tort "shall be deemed to be the agreement of ... such person that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa." *Id.*

Watters does not contest the fact that the record before the West Virginia court contained his signed receipt acknowledging mailed notice of Eagle's suit from the West Virginia Secretary of State in conformity with the West Virginia long arm statute. He merely argues that because service was by mail, it was not "personal" and thus, he contends, was ineffective to confer the West Virginia court's personal jurisdiction over him.

Watters' argument simply disregards what the Supreme Court recognized over sixty years ago in *Hess v. Pawloski:* that a state may, consistent with due process, confer the personal jurisdiction of its courts over a nonresident by means of substituted service under a long arm statute. Clearly, the West Virginia court had personal jurisdiction over Watters to adjudi-

cate a tort alleged to have been committed by him in that state.

IV. *Separate functions of Iowa Code chapters 626A and 626B.* Our decision regarding the validity of West Virginia's jurisdiction over Watters paves the way for affirmation of the Iowa district court's enforcement of the judgment against him. First, however, we must address some confusion injected into the case by the appellant's reference to Iowa Code chapter 626B in his motion to set aside the judgment. This apparently led the district court to rest its decision on chapter 626B rather than the correct statute, which is Iowa Code chapter 626A.

■ By its terms, chapter 626B's application to "foreign" judgments is limited to judgments obtained in the courts of foreign *countries,* not those obtained in other *states.* Iowa Code § 626B.1(2) (1991).[1] The mix-up is not surprising, given the fact that "foreign judgment" is a term of art that commonly refers to judgments of neighboring states. Moreover, the titles of the two statutes are deceptively similar. *See* Iowa Code § 626A.8 (chapter may be cited "Uniform Enforcement of Foreign Judgments Act"); Iowa Code ch. 626B (statute entitled "Uniform Foreign Money–Judgments Recognition Act").

■ Despite this error, the district court was quite right in granting full faith and credit to the West Virginia judgment. Iowa Code section 626A.2 provides that a properly authenticated foreign judgment

> has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the district court of this state and may be enforced or satisfied in like manner.

We have considered the only defenses advanced by Watters in relation to this judgment and find them to be legally insuffi-

cient to set it aside. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

**1.** In the statute, "foreign state" is defined as "[a]ny governmental unit other than the United States, a state, district, commonwealth, territory, insular possession of the United States, the Panama Canal Zone, the trust territory of the Pacific Islands, or the Ryukyu Islands." Iowa Code § 626B.1(2).