

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00018-CV

_____

WILCO FARMERS D/B/A WILCO FARM STORES, Appellant

V.

EDNA CARTER, INDIVIDUALLY AND ON BEHALF OF MICHAEL CARTER,
DECEASED; CHRISTOPHER CARTER; TAMMY TURNBOW; AND TERESA MILLER,
Appellees

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV43343

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

## OPINION

In February 2017, Wilco Farmers d/b/a Wilco Farm Stores (Wilco), an Oregon corporation,[1] placed an order for cattle gates and other goods from Priefert Mfg. Co., Inc. (Priefert), a Texas-based manufacturer. Priefert Logistics, LP (Priefert),[2] leased a truck from Aulsbrook & Son Truck Lines LLC (Aulsbrook), a Texas company, to take the fulfilled order from Priefert's facilities in Texas to Wilco's facility in Mount Angel, Oregon. Michael Carter, an employee of Aulsbrook, drove the truck to Oregon. While the cargo was being unloaded in Mount Angel, Carter sustained fatal injuries when some of the cargo fell on him. Consequently, Carter's widow and children filed this lawsuit in Hopkins County, Texas, against Wilco, Priefert, and Aulsbrook, alleging that their negligence caused Carter's injuries and death. In response, Wilco filed a special appearance and asserted that it was not subject to personal jurisdiction in Texas. The trial court denied the special appearance.

In this interlocutory appeal, Wilco contends that the trial court erred in denying its special appearance because its contacts with Texas are not sufficient to confer either general or specific personal jurisdiction over Wilco in Texas.

## I.      Background

Wilco is an Oregon corporation with its principal place of business in Mount Angel, Oregon. It has eighteen farm supply retail stores in Oregon and Washington. Wilco has had a

---

[1]For reasons not mentioned, none of the pleadings in the case of either the plaintiff or the defendants seem to indicate the structure of this entity (i.e., whether it is a partnership, a limited liability company, a sole proprietorship, or a corporation). The nature of the structure does not impact the decision in this case.

[2]The parties refer to both Priefert and Priefert Logistics as Priefert. We will do the same.

2

business relationship with Priefert for approximately twenty years, in which Wilco sells cattle squeeze chutes and corral panels supplied by Priefert. The relationship began when a sales representative of Priefert contacted Wilco by telephone and convinced Wilco to stock Priefert's products. Since that time, a Priefert salesperson came to Wilco stores in Oregon and Washington quarterly to make sales calls, to train Wilco's salespeople on the use of Priefert's products, and to instruct how to properly unload its merchandise upon delivery. In addition, almost every year Wilco sends certain of its employees to Priefert's facilities in Texas for additional training in the manufacture and use of Priefert's products. During these trips, no purchases are made by Wilco, and Priefert does not train Wilco employees on unloading its merchandise. Upon selling enough of Priefert's products, Wilco places an order by notification to Priefert, whereupon Priefert delivers the products from Texas to Oregon. Priefert determines the time and mode of delivery of the products. Priefert includes a brochure on how to unload its merchandise with the packing slip accompanying the delivered merchandise.

Wilco only advertises in Oregon and Washington. Although it advertises its merchandise (including some of the merchandise supplied by Priefert) on its website, its merchandise may only be purchased through one of its retail outlets. Wilco does not have any place of business in Texas, is not registered to do business in Texas, and does not have a bank account in Texas. None of its employees, officers, or directors reside in Texas. It does not own property or pay taxes in Texas. Priefert is Wilco's only Texas supplier.

In February 2017, Wilco sent a purchase order to Priefert for gates and other items. Pursuant to a contractor lease agreement with Priefert, Aulsbrook supplied the truck and driver,

3

Carter, used to deliver the shipment to Wilco in Oregon. While the cargo was being unloaded in Mount Angel, Carter sustained fatal injuries when some of the cargo fell on him.

Appellees filed this suit in Texas against Priefert, Aulsbrook, and Wilco, alleging that the defendant's negligence caused Carter's death. Its claim against Wilco includes allegations that Wilco was negligent in failing to unload the truck in a safe and secure manner, in failing to train its employees on how to safely unload cargo, and in failing to supervise its employees.

## II.     Standard of Review and *In Personam* Jurisdiction

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Old Republic Nat'l Title Ins. Co. v. Bell*, No. 17-0245, 2018 WL 2449360, at \*3 (Tex. June 1, 2018) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). When no findings of fact and conclusions of law are made by the trial court, "we infer 'all facts necessary to support the judgment and supported by the evidence.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

When there is a challenge to the trial court's *in personam*, or personal, jurisdiction, the plaintiff and the defendant have shifting burdens of proof. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). It is the plaintiff's initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. The non-resident defendant must then negate all bases of jurisdiction in the plaintiff's allegations. *Id.* Jurisdiction can be negated on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. The defendant can factually negate the plaintiff's allegations by presenting evidence that it has no

4

contacts with Texas. *Id.* The plaintiff must then respond with evidence affirming its jurisdictional allegations, or risk dismissal of its lawsuit by failing to do so. *Id.* The defendant can legally negate the plaintiff's allegation by showing that even if the allegations are true, either (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas do not amount to purposeful availment; (3) for specific jurisdiction, that the plaintiff's claims do not arise from the defendant's contacts; or (4) that the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice. *Id.*

"Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac*, 221 S.W.3d at 574 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute describes what constitutes doing business in the state, "[i]n addition to other acts." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 17.042). The only subsection pertinent to this appeal provides that a non-resident does business in Texas if it "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state."[3] TEX.

---

[3]This is the only subsection of the long-arm statute that Appellees assert on appeal in support of the trial court's denial of the special appearance. Although Appellees alleged in their amended petition that Wilco committed certain acts of negligence, none of these acts are alleged to have occurred, in whole or in part, in Texas. Therefore, Appellees' allegations do not allege jurisdictional facts that would invoke subsection (2) of the long-arm statute, which requires that a non-resident "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (West 2015). Consequently, to defeat this basis of personal jurisdiction, Wilco only had to submit evidence that it was not a Texas resident, which it did. *See Kelly*, 301 S.W.3d at 658–59. Appellees also alleged that Wilco "recruited . . . Carter, a Texas resident, through . . . Priefert, for employment outside the state." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(3) (West 2015) (providing that a non-resident does business in Texas if it "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state"). However, Wilco negated this allegation, and no evidence was presented to support the allegation. Appellees do not assert subsections (2) or (3) as bases for jurisdiction on appeal.

CIV. PRAC. & REM. CODE ANN. § 17.042(1) (West 2015). Because of the long-arm statute's broad language, it "reach[es] as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

The exercise of personal jurisdiction over a non-resident defendant is proper when it "has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). The non-resident defendant establishes minimum contacts when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (quoting *Int'l Shoe Co.*, 326 U.S. at 319)). These contacts "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Old Republic*, 2018 WL 2449360, at *3 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (citations omitted)). In determining purposeful availment, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated . . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* (quoting *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 151 (quoting *Retamco Operating, Inc.*, 278 S.W.3d at 338–39).

6

These contacts may result in two types of personal jurisdiction over the non-resident defendant. *Moki Mac*, 221 S.W.3d at 575 (citing *BMC Software*, 83 S.W.3d at 795–96). General jurisdiction arises when the defendant's contacts with the state are continuous and systematic, whether or not the cause of action arises from those contacts. *Id.* (citing *BMC Software*, 83 S.W.3d at 796). "Specific jurisdiction is established if the defendant's alleged liability 'aris[es] out of or [is] related to' an activity conducted within the forum." *Id.* at 576 (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Consequently, when considering specific jurisdiction, our minimum contacts analysis is focused "on the 'relationship among the defendant, the forum[,] and the litigation.'" *Id.* at 575–76 (quoting *Guardian Royal*, 815 S.W.2d at 228 (citations omitted)).

The Texas Supreme Court has explained, "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Id.* at 579. In Texas, the "arise from or related to" requirement is satisfied only when there is a substantial connection between the non-resident defendant's forum contacts and the operative facts of the litigation. *Old Republic*, 2018 WL 2449360, at *4; *Moki Mac*, 221 S.W.3d at 585.

7

### III.    Analysis

#### A.    Specific Jurisdiction

In support of general and specific jurisdiction over Wilco, Appellees alleged the following relevant facts for which there is some evidence in the record:[4]

   a)    Defendants Wilco and Priefert have a mutually-beneficial 20-year business relationship wherein Defendant Priefert is a dealer of farm equipment for Defendant Wilco, which sells Priefert's goods in Oregon and Washington;

   b)    Defendants Wilco and Priefert exchange hundreds of e-mails and phone calls each year;

   c)    Defendant Wilco makes hundreds of purchases (and these purchases involve the forming of hundreds of contracts) from Defendant Priefert each year;

   . . . .

   e)    On this specific occasion, Defendants Wilco and Priefert entered into a contract for the purchase of farm equipment that required . . . transport of goods from Texas to Oregon;

   f)    On this specific occasion, Defendant Wilco initiated contact with Defendant Priefert by submitting a purchase order;

   g)    Defendant Wilco sends its key personnel to Texas nearly every year for "Priefertization" training;

In their brief, Appellees flesh out the evidence supporting these allegations and argue that Wilco's contacts with Texas were purposeful and that it sought to profit and benefit by availing itself of

---

[4]We have omitted those allegations for which there is no evidentiary support. In addition, we have omitted those allegations which assert either the unilateral actions of Priefert, or actions that took place solely in Oregon and Washington, which are irrelevant to our inquiry. *See Old Republic*, 2018 WL 2449360, at \*3 (for purposes of purposeful availment, it is the contacts of the defendant with the forum state that are relevant, not the unilateral actions of another party or third person); *Moki Mac*, 221 S.W.3d at 575–76 (when considering specific jurisdiction, the minimum contacts analysis focuses on the defendant, the forum, and the litigation).

8

this jurisdiction. However, "purposeful availment alone will not support an exercise of specific jurisdiction." *Moki Mac*, 221 S.W.3d at 579. In addition to purposeful availment, "[f]or a Texas court to exercise specific jurisdiction over a defendant, the defendant's purposeful contacts must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Old Republic*, 2018 WL 2449360, at *4 (citing *Moki Mac*, 221 S.W.3d at 585; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 795 (Tex. 2005)). Even assuming, but not deciding, that Wilco's contacts with Texas support a finding of purposeful availment, these contacts are not substantially connected to the operative facts of the Appellees' claims against Wilco.

In *Moki Mac*, thirteen-year-old Andy Druggs died on a river rafting trip in Arizona with Moki Mac River Expeditions, a Utah-based river rafting outfitter. Andy's parents (the Druggs) learned about Moki Mac's excursions from a fellow Texas resident to whom Moki Mac had sent its brochures. The Druggs reviewed the brochures and Moki Mac's website, and after corresponding with Moki Mac's representatives from their home in Texas, decided to send Andy on the rafting trip. After an application and payment were submitted, Moki Mac sent the Druggs an acknowledgment-of-risk and release form, which both Andy and his mother signed and returned. On the second day of the rafting trip, Andy sustained fatal injuries when he fell backwards fifty-five feet while attempting to traverse a very narrow, boulder-blocked ledge. *Moki Mac*, 221 S.W.3d at 573.

The Druggs filed suit in Texas alleging that Moki Mac's negligence caused Andy's death and alleging intentional and negligent misrepresentation. After the trial court denied Moki Mac's

9

special appearance, the court of appeals affirmed the trial court based on specific jurisdiction and held that the misrepresentation claims arose from and related to Moki Mac's purposeful contacts with Texas. *Id.*

The Texas Supreme Court agreed with the court of appeals that Moki Mac's numerous contacts[5] with Texas satisfied that purposeful availment requirement of specific jurisdiction. *Id.* at 579. However, the court held that to satisfy the requirement that the claim "arise from or related to" the defendant's purposeful contacts, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* at 585 (citing *Guardian Royal*, 815 S.W.2d at 229–33).

The Druggs alleged that Moki Mac had made direct solicitation to them and that they depended on Moki Mac's assurances of the safety of the trip made in its brochures, including that it would provide appropriate equipment and skilled guides. The court accepted as true that the Druggs would not have sent Andy on the trip were it not for Moki Mac's representations about safety. However, the court noted that "the operative facts of the Druggs' suit concern[ed] principally the guides' conduct of the hiking expedition and whether they exercised reasonable care in supervising Andy" and that the focus of the trial and most of the evidence would be "[t]he events on the trail and the guides' supervision." *Id.* Consequently, the court held, "[T]he injuries for which the Druggs seek recovery are based on Andy's death on the hiking trail in Arizona, and

---

[5]The evidence showed that in addition to the direct contacts with the Druggs, Moki Mac regularly advertised in Texas, targeted media groups and tour operators located in Texas, solicited Texas residents through mass and targeted email campaigns, regularly and repeatedly sent brochures and trip information to Texas residents who had expressed an interest in a trip, and established channels of regular communications with its Texas customers. *Moki Mac*, 221 S.W.3d at 577–78. Through these contacts, the court found that Moki Mac sought and obtained profit from Texas residents. *Id.* at 578.

the relationship between the operative facts of the litigation and Moki Mac's promotional activities in Texas are simply too attenuated to satisfy specific jurisdiction's due-process concerns." *Id.* at 588.

Appellees argue that because of Wilco's longstanding relationship with Priefert, the allegations of unsafe loading/unloading, the allegations of inadequate safety training lodged against both Wilco and Priefert, and because Carter allegedly died "performing" a Texas contract, there is a substantial connection to its claim's operative facts.[6] First, in considering specific jurisdiction, we are only concerned with the non-resident's contacts with the forum and the relationship between those contacts and the litigation. *See id.* at 575–76. Therefore, Appellees' allegations of unsafe loading and inadequate safety training lodged against Priefert are not relevant considerations. In addition, even assuming the contract between Wilco and Priefert required Priefert to deliver the goods to Oregon, the undisputed testimony was that the manner and means of delivering the goods was solely in the control of Priefert. Further, the evidence showed that Priefert chose to deliver the goods by entering into a contract with Aulsbrook to perform the task

---

[6]Appellees also argue that "when a truck driver is hurt or dies attempting to deliver contract goods under a longstanding relationship, the injury is substantially related to the contract, the larger relationship and the defendant's forum-directed activity—even when the injury happens to occur out of state," citing *Hewitt v. Arrow Farms, Inc.*, 528 A.2d 446, 448 (Me. 1987), and *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010). Neither of these cases stand for this proposition. Although the facts in *Hewitt* are somewhat similar to the facts in this case, there is little analysis performed by the Maine Supreme Court, and it is unclear whether the Maine court found jurisdiction based on general or specific jurisdiction. It is clear, however, that the Maine court did not use the substantial connection standard adopted by the Texas Supreme Court in specific jurisdiction cases. *Hewitt*, 528 A.2d at 447–48. *Spir Star AG* is also inapposite. In *Spir Star AG*, a Texas resident was injured in Texas when a high-pressure hose manufactured by Spir Star, a German company, ruptured. *Spir Star AG*, 310 S.W.3d at 871. Spir Star marketed its products through a Texas distributor. The Supreme Court held that since Spir Star specifically targeted Texas as a market for its products, it was subject to a products liability suit in Texas based on a product sold in Texas, even if the sale was through a distributor. *Id.* at 874. However, because the sales were through a distributor, specific jurisdiction was limited to claims arising from those sales under the substantial connection test. *Id.* In this case, Wilco has never targeted Texas as a market, and the claim does not arise out of a sale of its products in Texas.

11

and that Aulsbrook supplied Carter to drive the truck. Thus, it appears that the contract that Carter was performing at the time of the incident was between Priefert and Aulsbrook. The unilateral actions of another party, or of a third person, are not relevant considerations when analyzing specific jurisdiction. *See Old Republic*, 2018 WL 2449360, at *3.

As in *Moki Mac*, the operative facts of the Appellees' claims against Wilco in this case concern principally whether Wilco's employees exercised reasonable care in unloading the truck and whether Wilco exercised reasonable care in training and supervising its employees, all of which took place in Oregon. Likewise, the focus of the trial and evidence concerning Appellees' claims against Wilco will be the events surrounding the unloading of the truck and Wilco's supervision of its employees. Wilco's contacts with Texas, consisting of its longstanding buyer-supplier relationship with Priefert and the mutual efforts of these parties to maintain and improve their relationship, cannot be said to be substantially connected to the operative facts of Appellees' claims against Wilco. Even though Wilco had ordered the goods involved in Carter's injuries from Priefert, this is not the subject matter of the suit and is unrelated to the operative facts of Appellees' negligence claim against Wilco.[7] *See Moki Mac*, 221 S.W.3d at 585.

Since there is not a substantial connection between Wilco's purposeful contacts with Texas and the operative facts of Appellees' claim, we find that the trial court erred in denying Wilco's special appearance, insofar as the trial court's order is based on specific jurisdiction.

---

[7]Although ultimately Carter would not have been injured had not Wilco been in a relationship with Priefert and had it not ordered the goods, this kind of "but for" standard has been rejected by the Texas Supreme Court. *See Moki Mac*, 221 S.W.3d at 580–81.

**B.    General Jurisdiction**

A non-resident defendant is subject to a court's general jurisdiction when its "affiliations with the state are so continuous and systematic as to render [it] essentially at home in the forum state." *Old Republic*, 2018 WL 2449360, at *8 (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Daimler v. Bauman*, 571 U.S. 117, 127 (2014))).   General jurisdiction "requires 'substantial activities within the forum' and presents 'a more demanding minimum contacts analysis than for specific jurisdiction.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *BMC Software*, 83 S.W.3d at 797).    Although a non-resident's contacts may be continuous and systematic, they will not confer general jurisdiction unless they "rise to the level of rendering a defendant '*essentially at home* in the forum [s]tate.'"   *Old Republic*, 2018 WL 2449360, at *8 (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler*, 571 U.S. at 134)).

Wilco does not have a place of business in Texas, is not registered to do business in Texas, and does not have a bank account in Texas.  None of its employees, officers, or directors reside in Texas.  It does not own property or pay taxes in Texas.  Its only contacts with Texas appears to be limited to those contacts resulting from its buyer/supplier relationship with Priefert.  These contacts are insufficient to confer a Texas court general jurisdiction over Wilco.  *See id.* at *8–9. Consequently, we find that the trial court erred in denying Wilco's special appearance.  We sustain Wilco's issue on appeal.

13

For the reasons stated, we reverse the trial court's order denying Wilco's special appearance and dismiss Appellees' cause of action against Wilco.

Bailey C. Moseley
Justice

Date Submitted: July 6, 2018
Date Decided: July 31, 2018

14