# IN THE COURT OF APPEALS OF IOWA

No. 18-0795
Filed January 9, 2019

**TROY HACK,**
    Plaintiff-Appellee,

**vs.**

**BRETT EDWARDS, EDWARDS AUTOMOTIVE,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Pottawattamie County, James M.

Richardson, Judge.

Brett Edwards appeals the district court's denial of his challenge to the

validity of an out-of-state judgment. **REVERSED AND REMANDED.**

Matthew V. Stierman, Council Bluffs, for appellant.

Daniel M. Northfield, Urbandale, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

Brett Edwards appeals the district court's denial of his challenge to the validity of an out-of-state judgment. The district court erred in concluding the issue of personal jurisdiction must be determined by the Texas court. We reverse and remand for entry of an order vacating the foreign judgment against Brett Edwards.

**I. Scope of Review.**

Our review is for correction of errors at law. *Eagle Leasing v. Amandus*, 476 N.W.2d 35, 36 (Iowa 1991).

**II. Background Facts and Proceedings.**

The record shows that on August 3, 2016, Troy Hack obtained a default judgment in the amount of $5702.00, plus interest and court costs, against a defendant "Edwards Automotive (Brett Edwards)" in a court in Hidalgo County, Texas. The default judgment indicated that "although duly served" "Edwards Automotive (Brett Edwards) . . . failed to file and answer or appear."

On March 26, 2018, Hack filed the Texas judgment in the Iowa District Court for Pottawattamie County, and the clerk of court sent notice of the filing of foreign judgment to a Brett Edwards at 920 32nd Avenue, Council Bluffs, which was the address provided by Troy Hack to the clerk for "Edwards Automotive (Brett Edwards)."

Pursuant to the Uniform Enforcement of Foreign Judgments Act, Iowa Code chapter 626A (2018), on April 6, 2018, Brett Edwards filed a motion to vacate judgment and motion for stay. He asserted:

> Notice of Foreign Judgment was mailed by the clerk of court on March 27, 2018 on Defendant Brett Edwards. No mailing has been made, to the Defendants knowledge, on Defendant "Edwards

Automotive". It is not clear from the Texas judgment whether "Edwards Automotive" was intended to be considered a separate legal entity, or an alter ego, because of the reference in the judgment as against Edwards Automotive, and parenthetically as against (Brett Edwards).

Brett also stated—and filed a supporting affidavit—that he had no contact with Hack, "either in Iowa or Texas"; he was the General Manager of Edwards Chevrolet-Cadillac; he resides and works in Council Bluffs, Iowa; he has had no contact with the state of Texas "related to this sale or any matter related thereto"; and he "does not reside, do business, or otherwise have minimum contacts with the state of Texas as would be required for the Texas court to have personal jurisdiction over him." Brett contended:

> In this case, the exercise of personal jurisdiction over Edwards would be improper where the contacts between Edwards and the state of Texas are non-existent, and indicate that Edwards did not purposefully avail himself of Texas's laws. *See Tung v. Am. Univ. of the Caribbean*, 353 N.W. 2d 869, 871-72 (Iowa. Ct. App. 1984) (dismissing action where an uncontested affidavit indicated that defendant did not transact any business in the forum state, did not have any agents or employees in the forum state; did not own property in the forum state; and did not have any minimal contacts with the forum state).

Hack filed a resistance, invoking the Full Faith and Credit Clause of the United States Constitution. Hack's resistance provides in part:

> (3) The Defendant was properly served by the sheriff of Pottawattamie County on July 6, 2017.
> (4) Such service provided notice to the Defendant that a pending case was presented to the court in Texas and it provided the time allowed to file an answer or risk having a default judgment entered against the Defendant.
> (5) Defendant failed to file an answer and a default judgment was entered on August 3, 2017 under Rule 239 of the Texas Rules of Civil Procedure.
> (6) The default judgment provided a notice of appeal allowing for 21 days from entry of default.

Without identifying to which "defendant" he referred, Hack argued the question of whether the defendant had sufficient contacts with the state of Texas was for the Texas court to decide, and because there was no challenge in the Texas court, the defendant could not challenge the judgment now.

In response, Brett noted that Hack had presented no supporting affidavits and challenged Hack's legal claims.

Hack filed a written response asserting, "Edwards Automotive 'did business' in Texas" sufficient to establish sufficient contacts with Texas to support personal jurisdiction in Texas. He noted, "Edwards Automotive . . . specifically targeted and contacted the [Troy Hack] through targeted advertisements and personal phone calls by its employee, Josh Hack, its contact was purposeful in establishing a customer relationship, and it expected a benefit by selling [Troy Hack] a vehicle." Attached to this response was: (1) an affidavit of a Josh Hack signed by a Nebraska notary, and (2) a forwarded promotional email—dated December 12, 2017—from "Edwards Motorsports & RV" with an address of 1010 34th Avenue, Council Bluffs, to an email address "trwhack@yahoo.com." Josh Hack averred he "worked for Edwards Autogroup from Oct 2013 to April 2016." Josh Hack further stated, "Edwards contacted Troy directly while he was in Texas (through employees, facebook and emails) and had contact [sic] him to come and buy another vehicle. He came in again in April of 2016 and bought another vehicle after being told he would get a good vehicle and good deal."

A telephonic hearing—for which we have no transcript—was held on April 23, 2018, after which the district court filed an order stating, "Issue of personal jurisdiction is within the providence of the Texas courts. Motion to vacate is

overruled." The district court offered no legal citation or discussion. The court stayed the proceedings for forty-five days "to allow Defendant to file a motion to vacate default judgment in Texas courts."

Brett appeals.

**III. Does the Iowa Court Have Authority to Address Brett Edwards' Challenge to the Texas Judgment?**

Brett asserts the district court erred in concluding the jurisdictional issue was to be determined by the Texas court. We agree.

"The Full Faith and Credit Clause requires the courts of each state to give a judgment of another state the same preclusive effect as it has in the state in which it was rendered, and this is true even if the judgment is obtained by default." *Edwards Rose Bldg. Co. v. Cascade Lumber Co.*, 621 N.W.2d 193, 194-95 (Iowa 2001). The court in *Edwards Rose* stated:

> Enforcement of a foreign judgment has been expedited by our adoption in 1979 of the Uniform Enforcement of Foreign Judgments Act, now found as Iowa Code chapter 626A. Under this act,
>> [a] copy of a foreign judgment authenticated in accordance with an Act of Congress or the statutes of this state may be filed in the office of the clerk of the district court of a county of this state which would have venue if the original action was being commenced in this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the district court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the district court of this state and may be enforced or satisfied in like manner.
>
> Iowa Code § 626A.2(1).
> The purpose of statutes like chapter 626A is to give effect to a foreign judgment without the necessity of suing on the judgment in a second action, although the latter remedy was preserved in Iowa by the uniform act. *See* Iowa Code § 626A.6. The commissioners' note to the uniform act explains the rationale:

> One of the things that contributes to calendar congestion is the Federal necessity of giving full faith and credit to the judgments of courts of other states. U.S. Const. art. IV, § 1. While there is no constitutional requirement that a debtor *who has had a full due process trial in one state* need be given a second full scale trial on the judgment in another state, this is the only course generally available to creditors. The usual practice requires that an action be commenced on the foreign judgment. The full procedural requirements apply to the second action.

Unif. Enforcement of Judgments Act (revised 1964), 13 U.L.A. 171 commissioners' prefatory note (1986).

621 N.W.2d at 194-95 (emphasis added).

Under the uniform act, then, the courts of Iowa are to give full faith and credit to a judgment of another state so "entitled." Iowa Code § 626A.1 (stating a "foreign judgment means a judgment . . . of a court of the United States or of any other court which is entitled to full faith and credit"). As observed in the Restatement (Second) of Judgments section 81 (1982):

> A judgment rendered in one state and relied upon as the basis of a claim or defense in a subsequent action in another *state may be avoided in the subsequent action* on the ground that the judgment was rendered without compliance with the requirements stated in § 1, i.e., that the court rendering the judgment have had territorial jurisdiction and jurisdiction of the subject matter of the action, and that adequate notice have been afforded.

(Emphasis added.) Comment "a" to section 81 explains:

> When a judgment of one state is attacked in one or the other of these procedural settings in another state, the judgment must be recognized if valid. Restatement (Second) Conflict of Laws §§ 93, 98. A judgment is valid for this purpose if the rendering court had jurisdiction of the subject matter, if the court had territorial jurisdiction, and if adequate notice was given to the party assertedly bound by the judgment. *Compare id.* § 92 *with* § 1 of this Restatement. *Questions going to the validity of the judgment, if seasonably raised, are determined by the court being asked to recognize the judgment, as a prerequisite to recognition. See* Restatement (Second) Conflict of Laws §§ 104-105. So also may questions of the judgment's

finality, present enforceability, and entitlement to recognition. *Id.* §§ 107-114, 116-121. . . .

In practical effect, the rule of this section rarely applies except when the judgment in question is a default judgment. The rule cannot have application to contested judgments whose validity is attacked on the ground of lack of territorial jurisdiction or inadequacy of notice. This results from the fact that if the original judgment was contested, the questions of territorial jurisdiction and of adequacy of notice necessarily must have been resolved in the original action. *See* § 69. Furthermore, if the original action was contested, the rendering court's assumption of subject matter jurisdiction is entitled to recognition, unless as a matter of the rendering state's law the question of subject matter jurisdiction can be reexamined in a subsequent action. *See* Restatement, Second, Conflict of Laws § 97. As a matter of the domestic law of each state, the circumstances under which the question of subject matter jurisdiction can be reexamined in a subsequent action are very narrow. See §§ 12 and 69 of this Restatement.

Restatement (Second) of Judgments § 81 cmt. a (emphasis added).

The authority of an Iowa court to address the validity of the foreign judgment is supported by Iowa Code section 626A.2, which provides in part:

The clerk shall treat the foreign judgment in the same manner as a judgment of the district court of this state. A judgment so filed has the same effect *and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment* of the district court of this state and may be enforced or satisfied in like manner.

(Emphasis added.) As one court has stated, "A foreign judgment need not be recognized if the foreign court lacked either personal or subject matter jurisdiction." *Whipple v. JSZ Fin. Co.*, 885 So. 2d 933, 936 (Fla. Dist. Ct. App. 2004); *accord Eagle Leasing*, 476 N.W.2d at 37.

In *Eagle Leasing*, the defendant, Jerry Watters, filed a motion to vacate a foreign judgment claiming it was void for lack of jurisdiction. 476 N.W.2d at 37. The district court did not refrain from addressing the validity of the foreign judgment—it addressed the merits of Watters' objections to West Virginia's

jurisdiction of the underlying judgment and rejected Watters' motion to set aside the judgment. *Id.* at 36-37. Watters appealed.

Our supreme court began its analysis as follows:

> Several fundamental principles guide our decision to affirm the district court. Article IV, section 1 of the United States Constitution requires the courts of each state to give "full faith and credit" to out-of-state judgments entered in accordance with recognized principles of due process. Among the primary due process concerns of interstate litigation is *proof of sufficient minimum contacts between the forum state and the defendant to justify the court's personal jurisdiction.*

*Eagle Leasing*, 476 N.W.2d at 37 (emphasis added) (citations omitted). The court noted that while Watters neither appeared nor answered in West Virginia, "[h]is attorney did . . . communicate with opposing counsel regarding settlement" and "counsel conceded that 'Mr. Watters was driving the vehicle and Mr. Watters is the one who damaged the vehicle.'" *Id.* at 36. Based upon the record submitted in the district court,[1] the supreme court concluded: "Clearly, the West Virginia court had personal jurisdiction over Watters to adjudicate a tort alleged to have been committed by him in that state the West Virginia court." *Id.* at 37-38.

We conclude the district court erred in determining the issue must be addressed in the Texas court. Although only a Texas court can vacate the Texas judgment, an Iowa court may vacate the foreign judgment for purposes of

---

[1] As indicated by the supreme court, the record before the district court consisted of: pleadings filed in a West Virginia proceeding against Jerry Watters, an Iowa resident; written admissions by Watters' counsel concerning his client's participation in the underlying controversy; the West Virginia court's findings of fact, conclusions of law, and judgment entry; the Warren County Clerk of Court's "Notice of Foreign Judgment"; Watters' "Application to Set Aside Foreign Judgment and Application for New Trial"; plaintiff Eagle Leasing's resistance; and the district court's ruling. *Eagle Leasing*, 476 N.W.2d at 36.

enforcement in Iowa by refusing to give the judgment full faith and credit. Here,

Brett Edwards asserts the Texas court lacked personal jurisdiction over him.

Jurisdiction is a question of law for the court. The Texas long-arm statute provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code § 17.042.

> Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. The Texas long-arm statute describes what constitutes doing business in the state, "[i]n addition to other acts." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 17.042). The only subsection pertinent to this appeal provides that a non-resident does business in Texas if it "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(1). Because of the long-arm statute's broad language, it "reach[es] as far as the federal constitutional requirements of due process will allow."
> The exercise of personal jurisdiction over a non-resident defendant is proper when it "has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" The non-resident defendant establishes minimum contacts when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." These contacts "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." In determining purposeful availment, we consider three factors:
> > First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant

> must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Wilco Farmers v. Carter*, 558 S.W.3d 197, 202-03 (Tex. App. 2018) (citations omitted).

Personal jurisdiction is a question of law, which the court reviews de novo.[2] *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Under Texas law, "It is the plaintiff's initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Wilco Farmers*, 558 S.W.3d at 202. The nonresident defendant then bears the burden to "negate all bases of jurisdiction in the plaintiff's allegations." *Id.* "The defendant can factually negate the plaintiff's allegations by presenting evidence that it has no contacts with Texas." *Id.*

Brett is the sole party who challenged the judgment in the Iowa district court.[3] The record before us does not contain the complaint filed by Troy Edwards in the Texas court, so we have no record on what basis default judgment was entered against "Edwards Automotive (Brett Edwards)." While not at all clear, we assume for purposes of this appeal that the Texas court entered judgment against Brett Edwards as an individual.

---

[2] *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("[A] judge may make factual findings necessary to resolve motions to dismiss for lack of personal jurisdiction, improper venue, and ineffective service of process."); *see, e.g., Statler v. Faust*, No. 09-2010, 2010 WL 3659109, at *3-5 (Iowa Ct. App. Sept. 22, 2010) (analyzing whether plaintiff had established defendant had sufficient minimum contacts with the state for the court to have personal jurisdiction over defendant).

[3] Thus, we make no determination and express no opinion as to the validity of the judgment as against "Edwards Automotive."

Brett has come forward with evidence that he has no contacts with the state of Texas that would allow the Texas to have personal jurisdiction over him. He filed an affidavit, which states:

> (2) I have been a resident of Council Bluffs, Iowa since Oct. 2003.
> (3) I have never had any contact with the Plaintiff, in Iowa or Texas.
> (4) I am employed now, and have been so employed since Feb. 2012, as the General Manager of Edwards Chevrolet-Cadillac, Inc. located in Council Bluffs, Iowa, and I am also a principal in that corporation.
> (5) I personally do not have any employees, agents or representatives in the State of Texas.
> (6) I have never maintained any personal office, real estate, bank accounts, or personal property in the state of Texas.
> (7) I have never personally advertised, solicited or otherwise done business in the state of Texas.
> (8) I am not familiar with any entity doing business or otherwise known as "Edwards Automotive." I am not affiliated with any such business.

Based on Brett's response, the burden returned to Hack to provide "evidence affirming its jurisdictional allegations, or risk dismissal of its lawsuit by failing to do so." *See id.*

Hack has not submitted proof that Brett was served with notice of the Texas lawsuit. His affidavit asserts that "[t]he defendant was properly served by the sheriff of Pottawattamie County on July 6, 2017," but is not accompanied with any proof of notice—on Brett Edwards or Edwards Automotive—and, moreover, bears a date that falls after the default judgment was entered.

Troy Hack has presented no affidavit of any contact he had with Brett. Nor has Hack produced evidence that Brett has any contacts with the state of Texas or any evidence Brett is affiliated with an entity "Edwards Automotive."

The affidavit of Josh Hack avers Josh Hack "worked for Edwards Autogroup from Oct 2013 to April 2016." Edwards Autogroup is not a named defendant in the suit and there is no indication of any connection between "Edwards Autogroup" and Brett Edwards. The statement—"Edwards contacted Troy directly while he was in Texas (through employees, facebook and emails) and had contact [sic] him to come and buy another vehicle."—is unhelpful because it is conclusory, ambiguous as to which Edwards it refers, and provides no basis for Josh's purported knowledge that "Edwards contacted Troy directly." Nor is it clear from Josh's affidavit where the purported contact occurred.

Because Hack has failed to prove Brett Edwards was served with notice of the Texas lawsuit or has any contacts with the state of Texas, we conclude the foreign judgment should be vacated and denied full faith and credit. Consequently, we reverse and remand for entry of an order vacating the foreign judgment against Brett Edwards.

**REVERSED AND REMANDED.**