

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00003-CV
_____

DAMON SCHEXNIDER, Appellant

V.

E-CIG CENTRAL, LLC; LG CHEM, LTD.; SHENZHEN IMR TECHNOLOGY CO., LTD.;
AND SHENZHEN FEST TECHNOLOGY CO., LTD., Appellees

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2018-2259-CCL2

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In 2017, Damon Schexnider purchased vaping/e-cigarette equipment, including an 18650[1] lithium-ion battery (HG2 battery)[2] packaged for use with the equipment. On or about July 1, 2017, Schexnider was carrying the battery in his pocket when it exploded, causing Schexnider to suffer severe burns to his body. As a result, Schexnider sued E-Cig Central, LLC (E-Cig), from whom Schexnider allegedly purchased the vaping/e-cigarette equipment and battery, and LG Chem, Ltd. (LG Chem), which Schexnider alleged designed, manufactured, and marketed the battery.[3] In this interlocutory appeal, Schexnider complains that the trial court erred when it granted LG Chem's special appearance. Because we find that (1) purposeful availment by LG Chem was not shown and (2) Schexnider's claims do not arise out of or relate to LG Chem's Texas contacts, we will affirm the trial court's order.

In Plaintiff's First Amended Original Petition, Schexnider's only jurisdictional allegations regarding LG Chem were that LG Chem "marketed, manufactured, designed and sold the e-cigarette battery purchased by [Schexnider] at Defendant E-Cig's store." LG Chem filed a special appearance and attached the affidavit of Sung Han Ryu, LG Chem's authorized representative. In addition to attesting that LG Chem is a Korean company with its headquarters and principal offices in Seoul, South Korea, Ryu attested to the following:

---

[1]18650 refers to the dimensions of the battery in which eighteen refers to the diameter of the cell and sixty-five refers to the length of the can.

[2]The 18650 lithium-ion battery in issue was identified as an LG Chem model HG2.

[3]Schexnider also sued Shenzhen IMR Technology Co., Ltd., and Shenzhen Fest Technology Co., Ltd. However, Schexnider made no allegations against these defendants.

10. LG Chem manufactures [its HG2 battery] for use in specific applications by sophisticated companies.

11. LG Chem does not design, manufacture, distribute, advertise, or sell [HG2 batteries] for use by individual consumers as replaceable, rechargeable batteries in electronic cigarette or vaping equipment.

12. If the subject battery identified in Plaintiff's First Amended Petition was, in fact, an LG brand [HG2 battery], it was not designed or manufactured in the State of Texas.

13. LG Chem has no relationship with E-Cig Central, LLC ("E-Cig Central") Shenzhen IMR Technology Co., Ltd.; and Shenzhen Fest Technology Co., Ltd., LG Chem does not direct or control the actions of Co-Defendants. LG Chem has never authorized Co-Defendants to distribute or sell [HG2 batteries] for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment.

14. LG Chem has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to advertise, distribute, or sell [HG2 batteries] for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment.

15. LG Chem has never authorized any distributor, retailer, or re-seller to advertise or sell [HG2 batteries] in Texas for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment.

16. LG Chem does not advertise, distribute or sell [HG2 batteries] in Texas for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment.[4]

In response, Schexnider filed Plaintiff's Second Amended Original Petition[5] and made an additional allegation that LG Chem "ha[d] placed its products, including 18650 batteries, into the 'stream of commerce' with the expectation and intent that they w[ould] be sold in Texas, and

---

[4]Ryu also attested to facts that showed that the Texas courts would not have general personal jurisdiction over LG Chem. Schexnider has conceded both at the trial court and on appeal that Texas courts do not have general personal jurisdiction over LG Chem.

[5]Plaintiff's Second Amended Original Petition was Schexnider's live petition at the time LG Chem's special appearance was heard.

3

there [sic] were sold in Texas, such that LG Chem . . . ha[d] purposefully availed itself of the privileges and benefits of Texas law." In his response[6] to LG Chem's special appearance, Schexnider also alleged (1) that LG Chem sold batteries to various American battery packers and power tool companies throughout the nation; (2) that LG Chem had two wholly owned American subsidiaries that conducted business in the United States, one of which maintained a license to do business in Texas, and one that manufactured lithium-ion batteries; (3) that LG Chem supplied its batteries to Stanley Black and Decker (SBD), which has manufacturing and other facilities in

---

[6]In support of his response, Schexnider attached verified copies of

1.   pages from LG Chem's website showing that it produced batteries and other products;
2.   pages from LG Chem's website showing that it produced different types of batteries for various applications;
3.   an excerpt from LG Chem's and its subsidiaries' consolidated interim financial statements, dated March 31, 2017 and 2016, showing the names and locations of LG Chem's subsidiary companies and its percentage of ownership;
4.   an order entered in a patent infringement suit between Celgard, LLC, plaintiff, and LG Chem and LG Chem America, Inc., defendants, pending in the United States District Court for the Western District of North Carolina, Cause No. 3:14-CV-43;
5.   an unreported opinion from that same case;
6.   an Inventus Power white paper titled "Annual Update on Lithium-Ion Battery Technology";
7.   affidavit of David Rondinone establishing that the subject battery was an LG HG2 battery;
8.   pages from the SBD website showing the location and basic information regarding four SBD manufacturing plants in Texas;
9.   Google Maps page purporting to show the location of an LG Electronics facility;
10.  registration information for LG Chem America, Inc., from the Texas Secretary of State, listing LG Chem America, Inc., as a foreign corporation located in New Jersey;
11.  an order denying LG Chem's special appearance by the 234th Judicial District Court of Harris County, Texas, in *Turner v. Sweet Carolina Vapors, LLC, et al.*, Cause No. 2018-44826;
12.  pages from SearchTX website listing cases involving LG Chem in the trial and appellate courts of Texas;
13.  deposition of Joon Young Shin taken in *Juan Manuel Flores v. LG Chem, Ltd and LG Chem America, Inc.*, Cause No. 1:16-CV-297, United States District Court for the Southern District of Texas;
14.  plaintiff's original complaint in Cause No. 1:16-CV-297; and
15.  LG Chem's answer to plaintiff's original complaint in Cause No. 1:16-CV-297.

4

Texas; and (4) that another "LG" entity maintained a business location in Texas to which Schexnider had "reason to believe" LG Chem shipped lithium-ion batteries.[7]

After hearing the parties' arguments, the trial court granted LG Chem's special appearance and dismissed Schexnider's claims with prejudice. Schexnider requested that the trial court issue findings of fact and conclusions of law, which the trial court refused to do. *See* TEX. R. APP. P. 28.1(c) (for appeals of interlocutory orders, "[t]he trial court need not file findings of fact and conclusions of law but may do so within 30 days after the order is signed"); *In re Estate of Davis*, 216 S.W.3d 537, 542 (Tex. App.—Texarkana 2007, pet. denied) (trial court does not have a duty to file findings of fact and conclusions of law in a special appearance that is subject to an interlocutory appeal).

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Wilco Farmers v. Carter*, 558 S.W.3d 197, 201 (Tex. App.— Texarkana 2018, no pet.) (quoting *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). "When no findings of fact and conclusions of law are made by the trial court, 'we infer "all facts necessary to support the judgment and supported by the evidence.""" *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002))). However, [w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be

---

[7]Schexnider also alleged that LG Chem has appeared and defended itself in cases in Texas having similar factual scenarios. On appeal, Schexnider does not assert that this allegation, or any evidence supporting it, should be considered in our analysis.

challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987)). In considering whether the evidence supports the trial court's ruling, "[w]e consider all of the jurisdictional evidence before the trial court." *Cagle v. Clark*, 401 S.W.3d 379, 387 (Tex. App.—Texarkana 2013, no pet.) (citing *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 919 (Tex. App.—Texarkana 2002, pet. denied)).

When there is a challenge to the trial court's *in personam*, or personal, jurisdiction, the plaintiff and the defendant have shifting burdens of proof. *Wilco Farmers*, 558 S.W.3d at 202 (citing *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010)). "It is the plaintiff's initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Id.* (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)). "The nonresident defendant must then negate all bases of jurisdiction in the plaintiff's allegations." *Id.* "Jurisdiction can be negated on either a factual or legal basis." *Id.* (citing *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010)). "The defendant can factually negate the plaintiff's allegations by presenting evidence that it has no contacts with Texas." *Id.* "The plaintiff must then respond with evidence affirming its jurisdictional allegations, or risk dismissal of its lawsuit by failing to do so." *Id.* The plaintiff's allegations can be legally negated

> by showing that even if the allegations are true, either (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas do not amount to purposeful availment; (3) for specific jurisdiction, that the plaintiff's claims do not arise from the defendant's contacts; or (4) that the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice.

*Id.*

"Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas "long-arm statute describes what, '[i]n addition to other acts,' may constitute doing business in this state." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 17.042). The subsection pertinent to this case provides that a nonresident does business in Texas if it "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2). "[T]he long-arm statute's broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" *Drugg*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

"Federal due-process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant." *Id.* (citing *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226). "Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). "Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

7

protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (quoting *Int'l Shoe Co.*, 326 U.S. at 319)).

"A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction." *Id.* (citing *BMC Software Belgium, N.V.*, 83 S.W.3d at 795–96). "A court has general jurisdiction over a nonresident defendant whose 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))). "When a court has general jurisdiction over a nonresident, it may exercise jurisdiction 'even if the cause of action did not arise from activities performed in the forum state.'" *Id.* (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996))).

In contrast, "specific jurisdiction 'may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state.'" *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (3d ed. 2002)). In specific jurisdiction cases, the analysis focuses on the "relationship among the defendant, the forum[,] and the litigation." *Id.* (quoting *Drugg*, 221 S.W.3d at 575–76 (quoting *English China Clays, P.L.C.*, 815 S.W.2d at 228)). "Specific jurisdiction is appropriate when (1) the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from

8

or relates to the defendant's contacts." *Id.* (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)).

The only issue before us is whether LG Chem's contacts with Texas are sufficient to confer specific jurisdiction over it as to Schexnider's personal injury claim.

Schexnider alleges (1) that LG Chem sells batteries to various American battery packers and power tool companies throughout the nation and (2) that LG Chem supplies its batteries to SBD, which has manufacturing and other facilities in Texas.[8] Assuming, without deciding, that

---

[8]As earlier noted, Schexnider made additional allegations in his response. Schexnider alleged that LG Chem had two wholly owned American subsidiaries that conducted business in the United States, one of which maintained a license to do business in Texas, that one subsidiary manufactured lithium-ion batteries, and that another LG entity had a business location in Texas to which he had reason to believe LG Chem shipped lithium-ion batteries. However, "Texas law presumes that two separate corporations are indeed distinct entities" and generally "will not because of stock ownership or interlocking directorship disregard the separate legal entities of corporations." *Marchand*, 83 S.W.3d at 798 (quoting *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex. 1968)). "To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." *Id.* at 799 (citing *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 418 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Further, "the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir.1983); *Conner*, 944 S.W.2d at 419). Schexnider made no allegations that LG Chem either controlled the internal business operations and affairs of its subsidiaries or that any such control was greater than what is normally associated with common ownership. "Because the plaintiff defines the scope and nature of the lawsuit," LG Chem was not required to negate jurisdiction based on the allegations related to its subsidiaries and related companies. *Kelly*, 301 S.W.3d at 658. Schexnider also did not offer any proof that LG Chem ships lithium-ion batteries to any "LG" entity's business location in Texas. In its reply in the trial court, LG Chem legally negated these allegations by arguing that, even if they were true, they were insufficient to establish personal jurisdiction over LG Chem.

Since Schexnider neither alleged nor offered any proof that LG Chem exercised any greater control over its subsidiaries than normally associated with common ownership, we must treat each subsidiary as a separate entity. *Id.* In our minimum contacts analysis, it is only LG Chem's contacts with Texas that are relevant, not its contacts with other entities that do business in the United States generally or the unilateral activity toward Texas of a third person or separate corporation. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884–87 (2011); *Drugg*, 221 S.W.3d at 575. Further, Schexnider's allegation that he "ha[d] reason to believe" that LG Chem shipped lithium-ion batteries to an LG entity in Texas, without more, did not meet his initial burden to plead sufficient allegations to bring LG Chem within the reach of the Texas Long-Arm Statute. *See Kelly*, 301 S.W.3d at 658–59.

these allegations satisfied Schexnider's burden to plead facts sufficient to invoke personal jurisdiction over LG Chem,[9] we examine whether the evidence supports the trial court's ruling.

Schexnider's claims against LG Chem are doomed by both the lack of purposeful availment by LG Chem and the lack of connection between Schexnider's claims and LG Chem's contacts with Texas.

*(1)    Purposeful Availment by LG Chem Was Not Shown*

The purposeful-availment requirement has three components.  *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).  "First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person."  *Drugg*, 221 S.W.3d at 575 (citing *Michiana*, 168 S.W.3d at 785).  "Second, the contacts relied on must be purposeful rather than random, fortuitous, or attenuated."  *Id.* (citing *Michiana*, 168 S.W.3d at 785).  "Thus, '[s]ellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities.'"  *Id.* (quoting *Michiana*, 168 S.W.3d at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985))).  "Finally, the 'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'"  *Id.* (quoting *Michiana*, 168 S.W.3d at 785).

---

[9]"[T]o support an exercise of specific jurisdiction, there must be a substantial connection between [the nonresident's] contacts [with Texas] and the operative facts of the litigation."  *Old Republic*, 549 S.W.3d at 560 (citing *Drugg*, 221 S.W.3d at 585).  Schexnider did not plead any factual allegations showing how LG Chem's sales of HG2 batteries and battery packs to SBD was substantially connected to his claims based on the HG2 battery he purchased from E-Cig.  Whether a plaintiff seeking to invoke a Texas's court's specific jurisdiction is required to plead facts showing a substantial connection between the nonresident defendant's contacts with Texas and the operative facts of the litigation appears to be an open question in Texas.

10

In the context of product sales, the purposeful-availment requirement may be met in two ways. First, when it is shown that "a nonresident . . . directs marketing efforts to Texas in the hope of soliciting sales," it "is subject to suit [in Texas] in disputes arising from that business." *Michiana*, 168 S.W.3d at 785. Thus, "operation of a sales and distribution network," "[a]dvertising in telephone directories in Texas cities, operating an office for sales information and support, and certain activities over the Internet . . . meet this standard." *Id.* (citations omitted).

Further, in some instances, the purposeful-availment requirement may be met when the nonresident defendant benefits from the Texas market by placing its products in the stream of commerce. *Id.* at 786. However, it is not enough to show that the nonresident defendant was aware that its product would enter Texas through the stream of commerce. *Id.* (citing *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 121 (1987) (Brennan, J., concurring in part)). Rather, there must be some "additional conduct" on the part of the defendant that "indicates an 'intent or purpose to serve the market in the forum State.'" *Spir Star AG*, 310 S.W.3d at 873 (quoting *Asahi Metal Ind. Co.*, 480 U.S. at 112). Such additional conduct would include:

> (1) "designing the product for the market in the forum State," (2) "advertising in the forum State," (3) "establishing channels for providing regular advice to customers in the forum State," and (4) "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."

*Id.*

LG Chem did not factually negate the allegations contained in Schexnider's response, and it affirmed to the trial court that it did not deny the allegation that its battery cells are sold in Texas. Rather, it provided evidence, which was undisputed, that it manufactured its HG2

11

batteries for use in specific applications by sophisticated companies.[10]    It also provided uncontested evidence that it had no relationship with E-Cig or the other defendants and that it does not advertise, distribute, or sell its HG2 batteries for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment in Texas.  LG Chem also provided uncontested evidence that it had never authorized the co-defendants, or any manufacturer, wholesaler, distributor, retailer, or re-seller, to advertise, distribute, or sell its HG2 batteries for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment, whether in Texas or elsewhere.[11]

In addition, the deposition testimony of Joon Young Shin showed that LG Chem manufactures the HG2 battery for battery packs that are used in power tools.  He explained that the HG2 battery was manufactured to be embedded in the battery pack with a protective circuit as a component of the pack.  Joon also testified that LG Chem sells its HG2 batteries to companies that make power tools, packers that make battery packs to be used on power tools, and to small agents that sell to small packers and small power tool companies.  He testified that LG Chem did not intend for the HG2 battery to be used in e-cigarettes and that LG Chem first learned that the HG2 battery was being used in e-cigarettes in late 2015 or early 2016.  In June 2016, LG Chem sent a letter to the agents and companies to whom it sells HG2 batteries with the

---

[10]At oral argument, LG Chem acknowledged that it distributed its HG2 batteries to be placed into battery packs used in power tools and that its HG2 batteries have entered Texas as a component of battery packs.

[11]Schexnider contends that we should not consider this evidence because it goes to LG Chem's merit-based defense of misuse.  *See Cagle*, 401 S.W.3d at 393 n.12 ("A special appearance relates solely to personal jurisdiction, not the merits of a claim or defense." (citing *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.) (citing *Michiana*, 168 S.W.3d at 791–92))).  However, this evidence was presented to negate any contention that the sale of the HG2 battery by E-Cig was related to any purposeful contact of LG Chem with Texas and to negate the specific jurisdiction requirement that the defendant's forum contacts must be substantially related to the operative facts of the litigation.  Consequently, it is relevant to our jurisdictional analysis.

subject line of "Notice on Prohibition of Unauthorized Sales of Battery Cells." Joon testified that the purpose of the letter was to direct their customers not to sell the HG2 batteries to businesses that would not use them for their intended purpose. The letter advised their customers that LG Chem strictly forbade the sale of individual batteries without protection circuits. The evidence also showed that LG makes several different types of batteries for various applications, in addition to the HG2.

Construing the record most favorably to Schexnider, Schexnider's unnegated allegations and the evidence before the trial court would support a finding that LG Chem supplied HG2 batteries to SBD for use in battery packs that are used in SBD's power tools and that it knew that some of the HG2 batteries delivered to SBD ended up in SBD's manufacturing plants in Texas. Although the evidence would support a finding that LG Chem was aware that its HG2 batteries had been used in e-cigarettes, missing from Schexnider's pleadings are any allegations that LG Chem, its distributors, or SBD supplied E-Cig, or any other retailer in Texas, with individual HG2 batteries for use as replaceable, rechargeable batteries. To the contrary, the evidence supports the trial court's implied findings that LG Chem had not sold its HG2 batteries to E-Cig or any other retailer in Texas for use as a replaceable, rechargeable battery, that it had not advertised, distributed, or sold its HG2 batteries for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment in Texas, and that it had not authorized any entity in its distribution line to do so.

The purposeful-availment requirement may be met when the nonresident defendant benefits from the Texas market by placing its products in the stream of commerce. *Michiana*,

13

168 S.W.3d at 786. But under the stream-of-commerce theory, it is not enough to show that LG Chem was aware that its product would enter Texas through the stream of commerce. *See Spir Star AG*, 310 S.W.3d at 873 (citing *Asahi Metal Ind. Co.*, 480 U.S. at 112). Rather, there must be some showing of "additional conduct" on the part of the defendant that "indicates an 'intent or purpose to serve the market in the forum State.'" *Id.* (quoting *Asahi Metal Ind. Co.*, 480 U.S. at 112).

In *Spir Star AG*, the Texas Supreme Court found that the "additional conduct" requirement had been shown when the evidence established that the foreign defendant had marketed its product through a distributor that agreed to serve as its sales agent in Texas, that the sales of its product in Texas accounted for over one-third of the defendant's annual sales, and that the defendant had directly targeted the Texas market when its board of directors created the separate sales entity and established an office for the sales entity in Houston to be near all the refineries. *Id.* at 875–77.

In support of his argument that the evidence showed that LG Chem intended to serve the Texas market, Schexnider points us to *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, in which the El Paso Court of Appeals found that the "additional conduct" requirement had been established. 508 S.W.3d 569, 582 (Tex. App.—El Paso 2016, no pet.). The evidence in that case showed that Semperit Technische Produkte (STP), an Austrian manufacturer, sold its products in the United States through a wholly owned subsidiary, Semperit Industrial Products, Inc. (SIP), a New Jersey corporation. *Id.* at 572–73. When SIP would make a sale, STP would ship the product directly to the American customer. *Id.* Over a ten-year

14

period, STP delivered over $7,000,000.00 of its products to Texas customers, including almost two million dollars to a European customer who had a Texas facility. *Id.* The product in question, a hydraulic hose, was sold by SIP to Mid West Hose & Specialty, Inc. (Mid West), which had offices in Texas. *Id.* at 573. The evidence also showed that SIP's president visited Mid West two times per year and once went to its Houston offices. *Id.* SIP sold STP's hydraulic hoses to at least six Texas customers, and over a several-year period, SIP's president had visited its customers in Texas and contacted up to fifty prospective Texas customers. *Id.* at 574.

In determining whether the additional conduct requirement had been met, the El Paso court pointed to the evidence that STP had indirectly sold several million dollars of its products in Texas through SIP and Mid West, SIP's efforts to target Texas customers, and SIP's knowledge that Mid West resold the STP product into Texas.[12] Based on these facts, the court concluded that STP had "participated in a distribution network that in multiple ways delivered STP's product to Texas end users." *Id.* at 579. Consequently, the court found that the additional-conduct requirement was satisfied by the "distribution network that . . . resulted in STP selling millions of dollars of goods to Texas customers." *Id.*

Unlike *Spir Star AG* and *Semperit*, this case is devoid of any evidence that LG Chem sold its HG2 batteries and its other batteries through a sales agent that agreed to market them in Texas, that LG Chem sold or delivered a significant amount[13] of its HG2 or its other batteries in

---

[12]In *Spir Star AG*, the Texas Supreme Court emphasized that in a stream-of-commerce analysis, the court's concern is with the foreign manufacturer's own conduct directed toward marketing its products in Texas, not the actions of its distributor. *Spir Star AG*, 310 S.W.3d at 874–75.

[13]In his brief, Schexnider points to the order entered in a patent-infringement suit between Celgard, LLC, plaintiff, and LG Chem and LG Chem America, Inc., defendants, pending in the United States District Court for the Western

15

Texas, or that LG Chem directly targeted Texas by establishing an office for any distributor in Texas or by sending its representatives to contact Texas customers and potential customers. Nor was there any other evidence that LG Chem directed its marketing efforts in hopes of soliciting sales in Texas, e.g., advertising in Texas, designing the product for the Texas market, or establishing channels for providing regular advice to Texas customers. *See Spir Star AG*, 310 S.W.3d at 873. Rather, the unnegated allegations in Schexnider's pleadings and the evidence showed that LG Chem's only contacts with Texas were that it sold an undetermined amount of HG2 batteries to SBD, some of which ended up in SBD's Texas facilities.

Based on this record, we find that Schexnider has not shown that LG Chem has engaged in the additional conduct that shows an intent or purpose to serve the Texas market required under the stream-of-commerce analysis. *See id.* Consequently, we find that Schexnider has not shown that LG Chem has purposely availed itself of the privilege of conducting activities within Texas. *See Michiana*, 168 S.W.3d at 784–85.

*(2)      Schexnider's Claims Do Not Arise Out of or Relate to LG Chem's Texas Contacts*

Even if we were to hold that LG Chem's sales of its HG2 batteries to SBD for use in SBD's battery packs showed that it had purposely availed itself of the Texas market, this would not be enough for a Texas court to exercise specific jurisdiction over LG Chem. Rather,

---

District of North Carolina, cause number 3:14-CV-43, as evidence that LG Chem nets nearly $1,000,000.00 per day from selling lithium-ion batteries in the United States. However, the batteries at issue in that case were batteries used in electric vehicles and various consumer electronic products, not the HG2 battery at issue in this case. Consequently, this evidence is irrelevant to our specific-jurisdiction analysis. First, evidence of sales of similar products by a defendant "would not create a substantial connection as to products that were not" sold. *Spir Star AG*, 310 S.W.3d 875. Second, evidence of sales throughout the United States of different batteries is no evidence of LG Chem's sales of its HG2 battery, or of its other batteries, in Texas.

16

"specific jurisdiction is limited to claims that 'arise out of or relate to' a nonresident's forum contacts." *Spir Star AG*, 310 S.W.3d at 874 (quoting *Burger King Corp.*, 471 U.S. at 472).

The second requirement of specific jurisdiction, that the cause of action arises from or relates to the defendant's forum contacts, "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Drugg*, 221 S.W.3d at 579. In Texas, to satisfy this requirement "there must be a 'substantial connection' between the defendant's contacts and the operative facts of the litigation." *Spir Star AG*, 310 S.W.3d at 874 (citing *Drugg*, 221 S.W.3d at 585). "So when a nonresident's only contacts with Texas involve indirect sales through a distributor or subsidiary, specific jurisdiction is limited to claims arising out of those sales." *Id.* (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000)).

In this case, Schexnider's claims do not arise out of or relate to LG Chem's sale of HG2 batteries to SBD.

Relying on *Semperit*, Schexnider argues that, since whether LG Chem was engaged in the business of selling the product is an operative fact in the litigation of Schexnider's claims, showing that LG Chem sells its HG2 battery in Texas establishes a substantial connection between his claims and LG Chem's purposeful contacts with Texas. In *Semperit*, the court struggled with applying *Drugg*'s formulation that, to show specific jurisdiction, there must be a "substantial connection" between the defendant's contacts and the operative facts of the litigation in a products liability case. *See Semperit*, 508 S.W.3d at 583–84. After examining the issues that would be the focus of the case, it concluded that "almost none of these issues would

17

implicate the kind of contacts that a manufacturer might typically have in the sale of its product in a forum." *Id.* at 583. However, since an essential element of the case would be whether the defendant was engaged in the business of selling the product, the court concluded that "evidence of [the defendant]'s sale of the product, including its other sales in Texas, [wa]s an operative fact of th[at] litigation." *Id.* at 584.

The court then examined the evidence presented to determine whether there was substantial connection between the defendant's Texas contacts and that operative fact:

> In summary, [the defendant] sold several millions of dollars' worth of industrial and high pressure hoses that it would have known were used in Texas. It in fact shipped much of the product here. A subsidiary that it created to market its goods actively and successfully penetrated the Texas market, both on its own and through a sub-tier distributor. A specific sale to that sub-tier distributor resulted in the hose finding its way to Upton County, where it is alleged to have failed.

*Id.* Based on this evidence, the court found that the defendant's Texas contacts were substantially connected to the operative facts of the case. *Id.*

Unlike *Semperit*, in this case, there was no evidence that LG Chem had sold or shipped a significant amount of its HG2 batteries in Texas. There was no evidence that LG Chem or any of its authorized distributors had shipped or sold any HG2 batteries to E-Cig or any other Texas customer, except SBD. The evidence and unnegated allegations showed only that LG Chem sold an undetermined amount of its HG2 batteries to SBD for use in its battery packs, some of which came to Texas. There was no evidence or unnegated allegations that Schexnider's claims arose from LG Chem's only Texas contacts, the sale of its HG2 batteries to SBD for use in its battery packs.

18

Under this record, we find that Schexnider has not shown that LG Chem's Texas contacts are substantially connected to the operative facts of this case. Consequently, we find that Schexnider has not shown that his claims arose out of or relate to LG Chem's Texas contacts. *See Spir Star AG*, 310 S.W.3d at 874.

For the reasons stated, we affirm the trial court's order dismissing Schexnider's claims against LG Chem. However, "[a] dismissal for want of personal jurisdiction is without prejudice to refiling the claim in a forum with proper jurisdiction." *Epicous Adventure Travel, LLC v Tateossian, Inc.*, 573 S.W.3d 375, 381 (Tex. App.—El Paso 2019, no pet.) (citing *Walz v. Martinez*, 307 S.W.3d 374, 383 (Tex. App.—San Antonio 2009, no pet.)). Therefore, we modify the trial court's order to dismiss Schexnider's claims against LG Chem without prejudice and affirm the order as modified.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 28, 2020
Date Decided:       November 25, 2020

19