**Opinion issued March 18, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00169-CV

———————————

**WAYNE J. ADAMS, BONNIE BROWN, CLAUDE BRITTON, III, CURTIS DAVIS, CAREY D. YAZEED, DWANE BOREL, JAMES S. DARTEZ, LLOYD COX AND LYNDA I. JENKINS, Appellants**

**V.**

**TORT NETWORK, LLC D/B/A VELAWCITY, Appellee**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2023-38188**

---

## MEMORANDUM OPINION

This lawsuit involves claims for alleged barratry and conspiracy to commit barratry filed by Appellants against the law firm McClenny Mosley & Associates, PLLC, Texas attorneys James McClenny and Zach Mosley, their Louisiana partner

Richard William Huye, III, and Appellee Tort Network, LLC d/b/a Velawcity ("Velawcity"), an Arizona company that executed several Marketing Service Agreements with the law firm to provide advertising and marketing services. Appellants appeal from the trial court's order sustaining Velawcity's special appearance and dismissing Appellants' claims against Velawcity for lack of jurisdiction.

In two issues, Appellants argue (1) the trial court erred in sustaining Velawcity's special appearance because Texas courts have specific jurisdiction over Velawcity, and (2) the trial court abused its discretion by denying their request for continuance of the special appearance to conduct jurisdictional discovery.

We affirm.

## Background

Appellants and Louisiana residents Wayne J. Adams, Bonnie Brown, Claude Britton, III, Curtis Davis, Carey D. Yazeed, Dwane Borel, James S. Dartez, Lloyd Cox, and Lynda L. Jenkins (collectively, "Appellants") sustained property damage when Hurricane Ida struck the Gulf Coast in August and September 2021. After the storm, Texas attorneys James McClenny and Zach Mosley of McClenny Moseley & Associates, PLLC ("MMA"), Louisiana attorney Richard William

Huye, III,[1] and Velawcity, an Arizona marketing company, allegedly solicited Appellants in Louisiana "using an illegal barratry scheme."

Appellants allege that from December 2021 through August 2022, MMA entered into five Marketing Service Agreements ("Contracts") with Velawcity. The Contracts state that Velawcity will provide "advertising and marketing services" to MMA for defined legal claims in certain designated marketing areas.[2] While the Contracts refer to Velawcity as "an independent contractor to [MMA]" for "marketing and administrative intake services," they also state that MMA "understands and agrees that it is retaining Velawcity as an agent to perform intake prescreening of prospective clients" and that Velawcity "is an agent of [MMA] for purposes of the intake prescreening of potential clients."[3]

The Contracts require Velawcity to:

- provide "marketing and administrative services" for MMA;

- provide "national advertising services" for MMA;

- perform "pre-screening intake administrative services" to "assess potential claimant eligibility" to make legal claims in connection with the hurricane;

---

[1]     Huye was MMA's managing partner in Louisiana.

[2]     The Contracts define "Legal Claims" as "pharmaceutical drug, medical device and/or multi-district litigation cases."

[3]     The Contracts also state that Velawcity is MMA's "independent contractor and agent[.]"

3

- provide "potential claimants who meet [MMA's] prescreening eligibility criteria with [MMA's] proposed fee agreement" and other documents;

- provide "advertising and marketing services" for MMA;

- transmit to MMA potential client contact information, fee agreements and HIPAA releases following Velawcity's pre-screening intake review of the potential client(s);

- use "specific intake scripts and survey questions . . . based upon the intake criteria required by [MMA] and at MMA's "supervision and direction";  and

- keep MMA "informed about the status of [MMA's] prospective client intake statistics on a daily basis."

MMA agreed to pay Velawcity a fixed rate for each "prescreened potential client reviewed for [MMA] and delivered to [MMA]."  According to Appellants, the Contracts were executed by Velawcity and MMA in Texas.[4]

Appellants allege that following Hurricane Ida, the "lawyers undertook a brazen attempt to enrich themselves by accumulating a massive docket of clients using an illegal barratry scheme" facilitated by Velawcity who secured "millions of dollars" from MMA "to solicit and deliver pre-screened clients and signed contingency-fee agreements for the firm."  In all, MMA paid Velawcity nearly $14 million for about 4,628 pre-screened and delivered potential clients over a period of about eight months.

---

[4] The Contracts between MMA and Velawcity do not indicate where they were executed, nor do they contain a choice-of-law clause.  It is also unclear whether Velawcity solicited MMA or MMA approached Velawcity in connection with the Contracts.

4

Appellants claim that Velawcity and MMA operated call centers pursuant to the Contracts to reach potential clients for MMA. They allege that potential clients were "contacted by telephone, social media or electronic communication" initiated by Velawcity, MMA, or certain construction companies[5] "in a live or electronically interactive manner, which solicited each of the [Appellants] to hire MMA to handle their [hurricane related] insurance claims." Appellants allege they entered into contingency fee contracts with MMA as a result of the solicitation and in turn, MMA filed insurance-related lawsuits on behalf of thousands of people, including Appellants, in Louisiana federal court. Appellants allege that after the lawsuits were filed, MMA was sanctioned by Louisiana federal courts for misconduct in connection with the mass insurance filings. Appellants also state that "the Louisiana Supreme Court suspended Huye from the practice of law in the state [and that the] remaining MMA lawyers licensed in Louisiana vanished from the firm, as did McClenny, leaving thousands of MMA clients without any representation."

Appellants sued MMA, McClenny, Mosley, Huey, and Velawcity in Texas state court for civil barratry under Section 82.0651 of the Texas Government Code[6]

---

[5] MMA allegedly contracted with construction companies to go door-to-door in neighborhoods in Louisiana affected by the hurricane to solicit clients. The construction companies are not parties to the present litigation.

[6] Subsection 82.0651(c) of the Texas Government Code addresses civil barratry claims. It provides:

and civil conspiracy to commit civil barratry. Only Velawcity is involved in the present interlocutory appeal. As to Velawcity, Appellants allege that Velawcity, with the intent to obtain an economic benefit, violated several provisions of Section 38.12 of the Texas Penal Code,[7] which prohibits barratry, and Texas Disciplinary Rule of Professional Conduct 7.03,[8] which addresses barratry. In support of their civil conspiracy claim, Appellants allege that the defendants, including Velawcity, "were members of a combination of two or more persons and the object of the combination . . . was the illegal and unethical in-person solicitation of [Appellants]." Appellants seek to recover a collective $1,800,000 in statutory damages from all defendants plus attorneys' fees. As it concerns Velawcity, "[e]ach of the nine [Appellants] seek $40,000 from Velawcity (for a

---

A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

TEX. GOV'T CODE § 82.0651(c).

[7] *See* TEX. PENAL CODE § 38.12(a)(2), (4), (6), (b)(1), (2), (3).

[8] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03(a)–(d), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A. Appellants allege that MMA and its attorneys violated the rule by paying "Velawcity and the construction companies they worked with more than $14 million to solicit potential clients, including [Appellants], who had not sought MMA's services, and who had no past relationship with MMA, nor any experience in legal matters."

6

total of $360,000)" claiming Velawcity purportedly "committed four acts of barratry on each of them."

In its petition, Appellants allege the trial court has personal jurisdiction over each defendant "because acts and omissions complained of herein occurred in Texas, each Defendant does and/or did business in the State of Texas, has committed a tort and violation of Section 82.0651 of the Texas Government Code, in whole or in part in Texas, is a resident and a citizen of Texas, and/or has minimum contacts with the state of Texas." As to Velawcity, Appellants allege that "[a]lthough [it] is an Arizona company, [Velawcity] contracted with the[] Texas lawyers in Texas, and received payments pursuant to those contracts from Texas, which are alleged to have constituted overt acts of barratry that violate Texas law."

Velawcity filed a special appearance objecting to the trial court's exercise of personal jurisdiction over it. It argued it lacked minimum contacts with Texas necessary to give rise to personal jurisdiction because:

- Appellants' allegations arise from conduct allegedly committed by Velawcity in Louisiana;

- Velawcity is not a citizen of Texas;

- Appellants do not allege Velawcity maintains an agent for service of process in Texas or that Velawcity is registered to do business with the Texas Secretary of State;

- Appellants are Louisiana residents;

7

- Appellants do not plead that the alleged solicitation communications were made by Velawcity in Texas;

- Velawcity maintains its principal place of business in Arizona, where it is a limited liability company;

- Velawcity had no Texas members at the time in question;

- Velawcity did not maintain a place of business in Texas;

- Velawcity did not control day-to-day operations of any Texas entity;

- There are no allegations of sanctionable attorney conduct or attorney discipline "having been effected by any Texas entity against Velawcity;"

- Velawcity's alleged tortious conduct did not affect Texas residents; and

- Velawcity's alleged tortious conduct did not cause damages in Texas.

Velawcity further argued the exercise of personal jurisdiction over it in Texas would offend traditional notions of fair play and substantial justice, and it would be unduly burdensome to require it to defend a suit in a state where it is not organized, did not maintain a place of business, and did not market to Appellants; Texas has no interest in adjudicating the dispute; Appellants, Louisiana residents, had no contact with Velawcity in Texas and were not damaged by Velawcity in Texas; and allowing the suit to proceed in Texas would "contravene case law on personal jurisdiction and First Amendment jurisprudence."

Velawcity attached the declaration of its president, Chaz Van De Motter, to its special appearance. Van De Motter testified that during the time at issue, Velawcity was a limited liability company formed under Arizona law; its principal

place of business was in Scottsdale, Arizona; it had no Texas members; it did not maintain any place of business in Texas, own any subsidiaries that maintained places of business in Texas, or control the daily operations of any Texas entity; and it did not market in Texas to Appellants.

Appellants filed a response to Velawcity's special appearance or, in the alternative, a motion to continue the special appearance hearing. They argued that Velawcity had minimum contacts with Texas because it had "purposefully availed itself to Texas by engaging in multiple contracts with Texas residents over a long period of time to act as an agent for a Texas law firm and engage in unlawful solicitation in violation of Texas law." According to Appellants, Velawcity:

- contracted with Texas residents to act as their "agent" and solicit employment;

- entered into five contracts with MMA, a Texas resident, during an eight-month period;

- performed administrative services as Texas law firm MMA's agent under MMA's supervision;

- took direction from MMA regarding the solicitation;

- "constantly communicated" with MMA and its attorneys about the solicitation; and

- committed four acts of barratry[9] in violation of section 38.12 of the Texas Penal Code.

---

[9] Appellants allege that Velawcity "violated Section 38.12(a)(2) [of the Texas Penal Code] by soliciting employment in person, it violated Section 38.12(a)(4) by paying or offering to pay its employees to solicit employment for MMA, it

9

Although Appellants acknowledged that no in-person solicitation had occurred in Texas, conceding they "were solicited in Louisiana," they nonetheless argued that Section 82.0651 of the Texas Government Code applied because the financing and directing of unlawful solicitation had occurred "domestically." They argued that MMA had "financed and directed the unlawful solicitation from Texas," that MMA had paid Velawcity "to carry out the solicitation as an 'agent' of [MMA]," and that "the conduct violate[d] the Texas criminal barratry statute" creating "civil liability against Velawcity." They concluded that because Velawcity's "liability arises from or relates to its forum contacts," and "Velawcity's contacts with the Texas firm [] form[] the operative facts of this litigation . . . specific jurisdiction exists."[10]

Appellants objected to Van De Motter's declaration as conclusory and vague. In addition, should the trial court not be inclined to overrule the special appearance, Appellants requested a continuance of the hearing to conduct jurisdictional discovery. In support of the continuance, Appellants attached a declaration from their counsel identifying the discovery they sought, including

violated Section 38.12(b)(1) by knowingly financing the commission of barratry, and it violated section 38.12(a)(6) by agreeing to accept money to solicit employment."

[10] Appellants argued that they only had to "allege that they were solicited by conduct violating Texas laws and rules governing barratry by Texas lawyers (MMA) and the case runners they employed (Velawcity), and that MMA financed and directed that solicitation from Texas."

10

information about Velawcity's "business dealings in Texas," its "communications with Texas residents," its "advertising to or solicitation of residents," and its travel to Texas to meet with Texas residents. They also requested to take Van De Motter's deposition.

In its special appearance reply, Velawcity argued that a plaintiff cannot establish personal jurisdiction over a nonresident defendant merely "by describing conduct that allegedly constitutes a valid cause of action[.]" Rather, the plaintiff "must plead specific facts showing that the defendant has purposefully availed itself" of the privilege of conducting business in the forum state by conducting activities there and that the cause of action "arises from or is related to" the defendant's "contacts or activities" in the state. Velawcity further argued that Appellants' request for a continuance should be denied because they had not requested additional jurisdictional discovery in the nearly seven months its special appearance had been pending.

During the special appearance hearing, Appellants requested they be allowed to conduct jurisdictional discovery by deposing Van De Motter and sending out "summary discovery" enabling them to submit a "comprehensive response" to the special appearance. Velawcity objected and argued the special appearance hearing had been set for nearly a month and the special appearance had been pending for seven months, yet there had been no discovery requests from Appellants. The trial

court judge denied the discovery request, explaining he did not see "why [Appellants] would need any specific discovery when the basis of [their] argument is the contract which is in evidence." In sustaining the special appearance, the trial court stated, "So you have the contract in [evidence] and there's no claim again that any Texas residents were involved or were solicited in the State."

After the hearing, the trial court entered an order sustaining Velawcity's special appearance, sustaining Appellants' objections to Van De Motter's declaration, and granting leave for Velawcity to amend the declaration to "cure technical defects." Velawcity filed an amended declaration six days later.[11, 12]

This interlocutory appeal ensued.[13]

**Personal Jurisdiction**

A court may assert personal jurisdiction over a nonresident defendant only if

---

[11]   The trial court signed the order on February 23, 2024. On February 29, 2024, Velawcity filed an amended declaration signed by Vincent Van De Motter, identifying him as the President of Velawcity through January 2024. Presumably, Chaz Van De Motter and Vincent Van De Motter, who share the same date of birth, are the same person. As noted, Chaz Van De Motter was President of Velawcity when he executed his declaration in July 2023.

[12]   On appeal, Appellants argue the "trial court abused its discretion when it allowed Velawcity to file an untimely amended declaration." Both the declaration and the amended declaration negated general jurisdiction. Because our analysis is limited to determining whether the trial court had specific jurisdiction over Velawcity— the only type of jurisdiction asserted by Appellants—we need not address Appellants' argument that the trial court abused its discretion in allowing Velawcity to file the amended declaration.

[13]   *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (identifying grant of special appearance as ruling subject to interlocutory appeal).

the Texas long-arm statute and due process requirements of the Fourteenth Amendment to the United States Constitution are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE § 17.042; *LG Chem. Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction over a nonresident defendant who is doing "business in this state," which the Legislature has defined to include "commit[ing] a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2); *LG Chem. Am.*, 670 S.W.3d at 346. The reach of the long-arm statute extends to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction over the nonresident defendant comports with traditional notions of fair play and substantial justice. *See LG Chem. Am.*, 670 S.W.3d at 346 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). A nonresident defendant's minimum contacts with a forum state are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *M & F Worldwide Corp.*, 512 S.W.3d at 886 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)); *Ford Motor Co. v.*

13

*Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *see also TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) ("The minimum-contacts requirement protects due-process rights by permitting a state to exercise jurisdiction over a nonresident defendant only when the defendant 'could reasonably anticipate being haled into court there.'") (quoting *Moncrief Oil*, 414 S.W.3d at 152).

A defendant's contacts with a forum state can give rise to either specific or general jurisdiction. *Ford Motor Co.*, 592 U.S. at 358. Specific jurisdiction exists when the claims involved in the litigation relate to or arise from the nonresident defendant's contacts with the forum state. *Id.* at 359; *see also M & F Worldwide Corp.*, 512 S.W.3d at 886. The specific jurisdiction analysis involves two components: purposeful availment and relatedness. *LG Chem. Am.*, 670 S.W.3d at 347. The defendant's contacts with the forum state must be purposeful, and the cause of action must "arise from or relate to" those contacts. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007). There must be a substantial connection between the defendant's purposeful contacts with the forum and the operative facts of the litigation. *LG Chem. Am.*, 670 S.W.3d at 347; *see also Moki Mac*, 221 S.W.3d at 585.[14] "[M]ere injury to a forum resident is not a sufficient connection to the forum." *TV Azteca*, 490 S.W.3d at 42; *see also Cooper*

---

[14] "Operative facts" are those facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

*Gay Martinez del Rio y Asociados Intermediarios de Reaseguro S.A. de C.V. v. Elamex, S.A. de C.V.*, No. 05-16-01436-CV, 2017 WL 3599690, at *8 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.) (same) (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

The Texas Supreme Court has characterized the "purposeful availment" requisite of specific jurisdiction as the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three significant aspects of the purposeful availment inquiry. *Id.* at 785. First, only the defendant's contacts with the forum state count. *Id.* This ensures that a defendant is not haled into a jurisdiction solely by the unilateral activities of a third party. *Id.* That is, the issue is not whether the plaintiff "experienced a particular injury or effect" in the forum but whether the defendant's conduct "connects him to the forum in a meaningful way." *TV Azteca*, 490 S.W.3d at 42 (citing *Walden*, 571 U.S. at 290). "[T]he analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 571 U.S. at 286).

Second, the acts relied on must be purposeful; a defendant may not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Michiana*, 168 S.W.3d at 785. Third, a defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* By

15

"invoking the benefits and protections of a forum's laws, a nonresident consents to suit there." *Id.*

General jurisdiction "involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *M & F Worldwide Corp.*, 512 S.W.3d at 885 (citing *PHC–Minden, LP v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007)); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) ("A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different [s]tate.") (emphasis in original). The general-jurisdiction inquiry is "very different from a specific jurisdiction inquiry" and involves a "more demanding minimum contacts analysis" with a "substantially higher threshold." *PHC-Minden*, 235 S.W.3d at 167–68 (citations omitted). For general jurisdiction to exist, the defendant's contacts with the forum state must be so continuous and systematic as to render the defendant "essentially at home in the forum [s]tate." *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *see also Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021).

The plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *See Moncrief Oil*, 414 S.W.3d at 149–150; *Kelly v. Gen. Interior Constr.*, 301 S.W.3d 653, 658–59 (Tex. 2010). The plaintiff bears the

initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moncrief Oil*, 414 S.W.3d at 149. If the plaintiff meets its initial burden, the burden shifts to the nonresident defendant to negate the plaintiff's alleged bases for jurisdiction. *Id.* The defendant can negate jurisdiction either by disproving the plaintiff's allegations or by showing that the evidence is legally insufficient to establish jurisdiction, taking the plaintiff's allegations as true. *Kelly*, 301 S.W.3d at 659.[15]

## Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Moncrief Oil*, 414 S.W.3d at 150). The trial court must often resolve fact questions before deciding the jurisdictional question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Douglas Elliman Realty, LLC v. Griffin Partners III-520/2017 L.P.*, No. 01-21-00083-CV, 2023 WL 2247765, at *10 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet.) (mem. op.) (citing *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.]

---

[15] A trial court determines a special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3).

2016, no pet.)). We will not disturb a trial court's resolution of conflicting evidence that turns on such credibility or weight. *Id.* When, as here, the trial court does not issue findings of fact and conclusions of law, all fact findings necessary to support the judgment and supported by evidence are implied. *Old Republic*, 549 S.W.3d at 558 (citing *BMC Software*, 83 S.W.3d at 795).

## Special Appearance

The Texas long-arm statute provides that a nonresident does business in this state if the nonresident:

> (1)    contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2)    commits a tort in whole or in part in this state; or
>
> (3)    recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042. The broad language of the Texas long-arm statute "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).[16]

---

[16]    Because Texas' long-arm statute's broad language allows it to "reach as far as the federal Constitution permits, . . . the due process analysis under state law is consistent with the federal test." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex.

18

Appellants argue that the Texas long-arm statute was invoked by their allegations that Velawcity contracted with MMA "to solicit employment for that firm in violation of [the Texas civil barratry statute] and the rules and laws governing barratry[.]" In their original petition, Appellants generally allege the trial court has personal jurisdiction over each defendant because "the acts and omissions complained of herein occurred in Texas, each Defendant does and/or did business in the State of Texas, has committed a tort and violation of Section 82.0651 of the Texas Government Code, in whole or in part in Texas, is a resident and citizen of Texas, and/or has minimum contacts with the State of Texas." Appellants then assert more specific jurisdictional allegations as to each defendant. As it concerns Velawcity, the original petition states: "Although Velawcity is an Arizona company, it contracted with these Texas lawyers in Texas, and received payments pursuant to those contracts from Texas, which are alleged to have constituted overt acts of barratry that violate Texas law." Appellants allege that MMA "paid Velawcity almost $14 million for signed contracts with approximately 4,628 clients." The petition continues: "Velawcity carried out the unlawful

App.—Austin 2005, no pet.) (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). And while "[d]ecisions of the federal courts of appeals and district courts do not bind Texas courts," "they are received with respectful consideration." *Bunting v. Kyle Bunting Holdings, Inc.*, No. 03-18-00656-CV, 2019 WL 2622318, at *4 n.4 (Tex. App.—Austin June 27, 2019, pet. denied) (quoting *Denton v. Texas Dep't of Pub. Safety Officers Ass'n*, 862 S.W.2d 785, 791 n.4 (Tex. App.—Austin 1993), *aff'd*, 897 S.W.2d 757, 759 (Tex. 1995).

solicitation as an agent of MMA, and at the direction of McClenny and Mosley."

Appellants allege in their pleadings that Velawcity committed four acts of barratry on each of them in violation of several sections of the Texas Penal Code.

Due process is satisfied—and personal jurisdiction may be exercised over the nonresident defendant—when the defendant has established "minimum contacts" with the forum state and the exercise of jurisdiction over the nonresident defendant comports with "traditional notions of fair play and substantial justice." *See LG Chem. Am.*, 670 S.W.3d at 346 (citing *Int'l Shoe*, 326 U.S. at 316–17). The minimum contacts prong comprises two kinds of personal jurisdiction: general and specific jurisdiction. *Rogers v. TexWest, L.L.C.*, 261 S.W.3d 818, 821 (Tex. App.—Dallas 2008, no pet.) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)).

Because Appellants asserted only specific jurisdiction in the trial court, we limit our analysis to specific jurisdiction.[17]

### Specific Jurisdiction

In their first issue, Appellants argue the trial court erred in sustaining Velawcity's special appearance because the court has specific jurisdiction over

---

[17] Appellants argued in the trial court that Velawcity was subject to personal jurisdiction in Texas because specific jurisdiction attached, stating: "Because Velawcity's liability arises from or relates to its forum contacts, specific jurisdiction exists." Appellants did not argue that the trial court could exercise general jurisdiction over Velawcity. We thus do not address whether the trial court had general jurisdiction over Velawcity.

Velawcity. Appellants argue they "presented evidence to establish personal jurisdiction over Velawcity, including the five barratry contracts." They argue the Contracts "demonstrated that Velawcity was engaged by the Texas law firm . . . to act as its agent and unlawfully solicit employment in violation of Texas barratry laws." Appellants argue that Velawcity's contacts with Texas "were purposeful, not random, fortuitous, or attenuated." They aver that over an eight-month period, Velawcity

> Performed[ed] pre-screening intake administrative services for [MMA] as [MMA's] agent, based upon [MMA's] written criteria and under [MMA's] supervision, to assess potential claimant eligibility for specific Legal Claims.

> The Contracts state in pertinent part:

> Velawcity, in consultation with [MMA], will use specific intake scripts and survey questions for each Legal Claim, based upon the intake criteria required by [MMA]. The intake pre-screening administrative services provided by Velawcity will be pursuant to the [MMA's] supervision and direction. . . .

> Upon Velawcity's pre-screening intake review of a potential client's eligibility, Velawcity will transmit to [MMA], with potential client's consent, the potential client's contact information, fee agreement and HIPAA release either by direct posting through established secure connection with [MMA] system or email. . . .

The Contracts also state that MMA "is responsible for review of all marketing and advertising provided by Velawcity to confirm the material's compliance with Law Firm's ethical obligations in relevant states." Finally, the Contracts state that Velawcity "will keep [MMA] informed about the status of [MMA's] prospective

21

client intake statistics on a daily basis through Velawcity's dashboard platform." Appellants argue that through these Contracts, Velawcity purposefully availed itself of Texas law and benefitted "[b]y acting as essentially a sales agent for a Texas firm, receiving payments from that Texas firm, and regularly communicating with that Texas firm."

Velawcity responds it lacks minimum contacts with Texas sufficient to give rise to specific jurisdiction because neither Appellants nor Velawcity are Texas citizens, and the alleged wrongful conduct by Velawcity did not occur in Texas. Velawcity avers there is "simply no nexus among/between Velawcity, the state of Texas, and the conduct at issue." According to Velawcity, Appellants do not claim they sustained any damages in Texas, and Velawcity is not alleged to have committed a tort in Texas. Velawcity contends Appellants are forum shopping because Louisiana, unlike Texas, does not have statutory penalties or damages for barratry or the unauthorized practice of law.

Appellants correctly point out that it is the defendant's relationship with the forum state, rather than the plaintiff's relationship, that is the proper focus of a specific jurisdiction analysis. Courts "must consider the relationship between the defendant, the forum state, and the litigation." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). In other words, the special appearance analysis turns on Velawcity's relationship with Texas. There must be a substantial connection

22

between Velawcity's relationship with the forum state and the operative facts of the litigation. *LG Chem. Am.*, 670 S.W.3d at 347; *Moki Mac*, 221 S.W.3d at 585. In assessing Velawcity's relationship with Texas, we consider only Velawcity's purposeful contacts with the forum state. "[T]he analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *TV Azteca*, 490 S.W.3d at 42 (citing *Walden*, 571 U.S. at 285).[18]

## A.     Purposeful Availment

According to Appellants, the minimum contacts that give rise to specific jurisdiction over Velawcity in Texas are (1) Velawcity's Contracts with MMA; (2) Velawcity's receipt of payments from MMA; and (3) the argument that Velawcity's solicitation of Appellants in Louisiana subjects Velawcity to liability in Texas. We conclude that the first two contacts are insufficient to establish specific jurisdiction and the third is not relevant to our jurisdictional analysis.

---

[18]     Even when a plaintiff alleges that the nonresident defendant engaged in a civil conspiracy with a forum state resident, courts examine only the contacts of the nonresident defendant who filed the special appearance in determining whether it is subject to the court's jurisdiction. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (orig. proceeding) (declining to recognize assertion of personal jurisdiction over nonresident defendant based only on consequences of alleged conspiracy with forum state resident, holding that jurisdictional inquiry is restricted to whether defendant who filed special appearance "purposefully established minimum contacts such as would satisfy due process"); *see also Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018) ("The mere existence or allegation of a conspiracy directed at Texas is not sufficient to confer jurisdiction.") (citing *Gibson*, 897 S.W.2d at 773).

### 1.    Liability is a separate inquiry from personal jurisdiction.

Appellants argue that Velawcity is subject to specific jurisdiction in Texas because its solicitation of Appellants in Louisiana subjects Velawcity to liability in Texas.  Whether Velawcity is liable for civil barratry in Texas is an inquiry separate from whether it purposefully availed itself of the privilege of conducting business in Texas subjecting it to specific jurisdiction.  The purpose of a special appearance is not to determine liability, but to determine whether the actions alleged by the plaintiff are such that a defendant should expect to be subject to Texas jurisdiction.  *See Mort Keshin & Co., Inc. v. Hous. Chronicle Publ'g Co.*, 992 S.W.2d 642, 648 (Tex. App.–– Houston [14th Dist.] 1999, no pet.) ("The purpose of this [special appearance] proceeding is not to determine ultimate liability, but simply to assess whether [the defendant] should be forced to respond to suit in Texas.").  Thus, even if Velawcity's actions could give rise to civil liability under the Texas barratry statute, an issue we do not decide today, we must still consider whether Velawcity is subject to specific jurisdiction in Texas.

### 2.    Velawcity's Purported Contacts with Texas

Appellants argue that Velawcity is subject to specific jurisdiction in Texas because it contracted with MMA and received payments from MMA under the Contracts.  We disagree.

24

It is well-settled that a nonresident defendant's actions in contracting with a Texas entity and receiving payments from Texas under the contract are insufficient in and of themselves to confer personal jurisdiction over the nonresident defendant, especially when as here, the contract calls for performance outside the forum state. *See Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 730 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("We do not believe that initiating contract discussions with a Texas resident, and subsequently entering into a contract, in addition to making payment in Texas, are sufficient contacts with Texas when the entire substance of the contract is performed outside the state."); *Thumpers Custom Car Stereo, Inc. v. Martinez*, No. 2-06-172-CV, 2007 WL 614184, at *7 (Tex. App.—Fort Worth Mar. 1, 2007, no pet.) (mem. op.) ("[A] nonresident's action in merely contracting with a Texas resident for performance of a contract wholly outside of Texas is insufficient to trigger specific jurisdiction in Texas.").

In their original petition, Appellants allege that Velawcity committed four acts of barratry on each of them, describing the acts as follows:

- Section 38.12(a)(2) "by soliciting employment in person;"

- Section 38.12(a)(4) "by paying or offering to pay its employees to solicit employment for MMA;"

- Section 38.12(b)(1) "by knowingly financing the commission of barratry;" and

- Section 38.12(a)(6) "by agreeing to accept money to solicit employment."

With respect to the first three allegations, Appellants acknowledge that none of those activities took place in Texas. Appellants concede that Velawcity—an Arizona entity—solicited them in in Louisiana and that no in-person solicitation took place in Texas. Their purported solicitation involved the handling of insurance claims in Louisiana related to hurricane-related damage in Louisiana, which resulted in lawsuits filed in Louisiana. Appellants are residents of Louisiana and while they claim they are entitled to recover statutory fees under the Texas civil barratry statute, they have alleged no injury in Texas.

While Appellants' fourth allegation concerns Velawcity's acceptance of money from MMA "to solicit employment" from Appellants, mere receipt of payments from a Texas resident is also insufficient to establish specific jurisdiction over a nonresident defendant in Texas. *See 3-D Elec. Co., Inc. v. Barnett Constr. Co.*, 706 S.W.2d 135, 142 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("[T]he making of payments in Texas is not sufficient to establish minimum contacts.") (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983)); *Blair*, 80 S.W.3d at 729 (noting personal jurisdiction is not "justified by the single fact that a contract is payable in Texas").

Appellants thus have not established any purposeful contacts with Texas giving rise to specific jurisdiction. And even if they had, they would not prevail.

26

## B.      Substantial Connection to Operative Facts

Even if we concluded that the Contracts and related payments to Velawcity were purposeful contacts of Velawcity with Texas, Appellants must also establish that Velawcity's purposeful contacts with the forum state are substantially connected to the operative facts of the litigation or form the basis of their causes of action.  Appellants have not done so.

The decision in *Moki Mac River Expeditions v. Drugg* is instructive.  221 S.W.3d 569 (Tex. 2007).  In *Moki Mac*, a Utah-based seller of river-rafting expeditions was sued following the death of the plaintiffs' teenage son ("Andy") during a river-rafting trip in Arizona. *Id*. at 573.  Moki Mac did not directly solicit the plaintiffs. *Id.*  Rather, they learned about the trip from a Texas resident ("Seals") who had contacted the company about a rafting trip. *Id.*  Moki Mac sent Seals a brochure advertising the next season of excursions and Seals shared the brochure with the plaintiffs. *Id.*  The plaintiffs corresponded with Moki Mak from their home in Texas and decided to send Andy on the rafting trip. *Id.*  After the plaintiffs paid for the excursion, Moki Mac sent a letter confirming payment to the plaintiffs' Texas home, along with an acknowledgment-of-risk and release form. *Id.*  Andy and his mother signed the form and returned it to Moki Mac. *Id.*  Andy was fatally injured during the trip and his parents filed a wrongful death suit on their own behalf and on behalf of Andy's estate against Moki Mac in Texas,

27

alleging negligence and intentional and negligent misrepresentation. *Id.* Andy's mother alleged, among other things, that she was induced to send Andy on the rafting trip "by Moki Mac's direct solicitation, which included statements made in Moki Mac's brochures and in the release" sent to her in Texas for her signature. *Id.* at 585.

Moki Mac filed a special appearance, which the trial court overruled. *Id.* at 573. The court of appeals affirmed, holding there was specific jurisdiction over Moki Mac because the misrepresentation claim "arose from, and related to, Moki Mac's purposeful contacts with Texas." *Id.* The Supreme Court reversed, holding the trial court lacked specific jurisdiction over Moki Mac, and remanded to the court of appeals to determine whether general jurisdiction existed. *Id.* at 588. In holding the trial court lacked specific jurisdiction over Moki Mac, the Supreme Court focused on the operative facts of the suit, noting "[t]he events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Id.* at 585. The court held the alleged misrepresentation by Moki Mak in Texas was "not the subject matter of the case . . . nor [was] it related to the operative facts of the negligence action." *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)). The court held, "Whatever connection there may be between Moki Mac's promotional materials sent to Texas

28

and the operative facts that led to Andy's death, we do not believe it is sufficiently direct to meet due-process concerns." *Id.* The court continued:

> Moki Mac's promotional representations, while theoretically related to Andy's injury on the hiking trail in the sense that but for them he might not have been there, are not sufficiently related to the operative facts underlying Andy's injury for which the [plaintiffs] seek recovery in wrongful death to sustain the exercise of specific jurisdiction.

*Id.* at 588.[19]

The same is true here. While the Contracts between MMA and Velawcity are "theoretically related" to Appellants' barratry claims in that, but for the Contracts, Appellants would not have been allegedly solicited, the Contracts are not "sufficiently related to the operative facts" underlying Appellants' barratry claims to justify the exercise of specific jurisdiction.[20] The operative facts

---

[19] Appellants' attempts to distinguish *Moki Mac* from two of this Court's cases are unavailing. *Turner Specialty Servs., LLC v. Horn*, No. 01-22-00031-CV, 2022 WL 16640624, at *9 (Tex. App.—Houston [1st Dist.] Nov. 3, 2022, pet. denied) (mem. op.) involved "alleged Texas-based conduct in providing improper safety training," which was the basis for the defendant's liability. But the basis for Velawcity's alleged liability is the purported solicitation of Appellants in Louisiana. Thus, *Turner* is inapplicable. And *Aloysius v. Kislingbury*, No. 01-09-00365-CV, 2010 WL 987745 (Tex. App.—Houston [1st Dist.] Mar. 18, 2010, no pet.) (mem. op.) is similarly inapposite because it is "directly related to Aloysius' alleged embezzlement of funds in Texas." *Id.* at *8.

[20] *See generally Rush v. Savchuk*, 444 U.S. 320, 329 (1980) (holding insurer's place of business was not relevant in jurisdictional analysis involving car accident in other state because auto insurance policy was "not the subject matter of the case, [] nor [wa]s it related to the operative facts of the negligence action. The contractual arrangements between the defendant and the insurer pertain only to the conduct, not the substance of the litigation, and accordingly do not affect the court's jurisdiction unless they demonstrate ties between the defendant and the forum").

29

underlying Appellants' claims do not concern the terms of the Contracts, but rather Velawcity's alleged solicitation of Appellants in Louisiana for MMA to handle their property insurance claims in Louisiana. The focus of the litigation against Velawcity will thus involve determination of who was solicited, how the solicitation occurred, where it occurred, and what Appellants were told to induce them to become MMA clients. All these inquiries involve conduct in Louisiana. Velawcity's contractual relationship with MMA is thus not "sufficiently related to the operative facts" underlying Appellants' claims.

Our opinion in *DWB Consulting, LLC v. Ratliff*, No. 01-19-00867-CV, 2020 WL 4516989 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet.) (mem. op.) is also instructive. Benjamin Ratliff, a Mississippi resident, sued DWB, a Louisiana company, and three other companies in connection with injuries he allegedly sustained while working on an inland barge in Louisiana. 2020 WL 4516989, at *1. Among the defendants was Texas-based Hilcorp Energy Company. *Id.* Hilcorp and DWB had a contract for DWB to provide consulting services outside of Texas. *Id.* Ratliff alleged that DWB acted as Hilcorp's agent and oversaw Hilcorp's Louisiana operations. *Id.* Ratliff filed suit in Texas court for damages under the Jones Act,[21] Texas common law, and general maritime law, alleging the defendants' negligence and gross negligence caused his injuries. *Id.* DWB filed a

---

[21] 46 U.S.C. § 30104.

30

special appearance. *Id.* at *2. Ratliff argued in opposition to the special appearance that DWB conducted "exclusive" business with a Texas citizen, worked for a Texas citizen, consistently communicated with a Texas citizen, and benefited from conducting business in Texas. *Id.* DWB argued it lacked minimum contacts with Texas because "its only contact, a contract with a Texas company to provide consulting services outside of Texas, [wa]s not substantially connected to Ratliff's alleged injuries while lifting a heavy object" on the Louisiana barge. *Id.* at *1. The trial court denied the special appearance. *Id.*

On appeal, we held that even if DWB had "purposefully availed itself of the privilege of conducting activities in Texas by entering into a consulting contract with a Texas company from which DWB derived all of its income over a four-year period," Texas courts could exercise personal jurisdiction over DWB only if its "purposeful contact [wa]s substantially connected to the operative facts of Ratliff's negligence and gross negligence claims against DWB." *Id.* at *5.[22] Noting that the focus of the trial would be on DWB's actions and conduct on the barge where Ratliff was allegedly injured, rather than on DWB's contract with Hilcorp, we explained that while DWB owed contractual obligations to Hilcorp, the contract "had nothing to do with Ratliff's lifting of heavy objects on the [barge] and,

---

[22] Unlike the present case, the Hilcorp-DWB contract was not in the appellate record. *DWB Consulting, LLC v. Ratliff*, No. 01-19-00867-CV, 2020 WL 4516989, at *6 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet.) (mem. op.). That does not change our analysis, however.

31

therefore, the contract [wa]s not substantially connected to [his] personal injury lawsuit."[23]  *Id.* at *6.  We relied on *Moki Mac*, noting that "[j]ust as the operative facts leading to Andy's death in Arizona were not substantially connected to Moki Mac's extensive advertising of its trips to Texas residents, the operative facts leading to Ratliff's alleged injury from lifting heavy objects on a vessel in Louisiana [were] not substantially connected to DWB's consulting contract with a Texas company."  *Id.* at *7.

Similarly, we hold that for jurisdictional purposes, Velawcity's contractual relationship with MMA is not substantially connected to Appellants' claims or alleged injuries, which occurred if at all in Louisiana—the only place they were solicited by Velawcity and the only place where they claim they suffered damage

---

[23]  There was no evidence in *DWB Consulting, LLC* that DWB "oversaw, managed, or supervised" Ratliff.  *Id.*  Here, Appellants argue that pursuant to the Contracts, MMA directed Velawcity's activities in Louisiana.  Even if that were the case, MMA's conduct in directing Velawcity's actions in Louisiana does not inform our jurisdiction analysis.  In analyzing whether Velawcity is subject to specific jurisdiction in Texas, we focus on Velawcity's purposeful contacts with the forum state, not on Velawcity's contacts with persons who reside in the forum state or the unilateral acts of third parties.  *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 42 (Tex. 2016) (explaining that jurisdictional analysis focuses on defendant's contacts with forum state and not on defendant's contacts with people who reside there); *Wilco Farmers v. Carter*, 558 S.W.3d 197, 206 (Tex. App.—Texarkana 2018, no pet.) ("The unilateral actions of another party, or of a third person, are not relevant considerations when analyzing specific jurisdiction.").  We further note that there is no allegation MMA directed or controlled any conduct by Velawcity in Texas.

32

as a result. The operative facts of Appellants' claim turn on the solicitation of Appellants in Louisiana, not on the terms of Velawcity's contract with MMA.[24]

## C. Appellants' Authorities

Appellants rely extensively in their special appearance response and on appeal on our opinion in *Cheatham v. Pohl*, 690 S.W.3d 322 (Houston [1st Dist.] 2022, pet. granted). They argue that under the Texas civil barratry statute, "improperly solicited clients and potential clients can bring a civil barratry cause of action against those who solicited them and recover fees due under a contract of representation as well as actual damages, penalties, and attorney's fees." *Id.* at 331 (citing TEX. GOV'T CODE § 82.0651(a-d)). They argue that the statute makes "any person who committed barratry" in violation of Texas law liable to the unlawfully solicited person. They thus conclude that Velawcity's contacts with MMA form the operative facts of the litigation.

*Cheatham* is not a special appearance case. There is no analysis in *Cheatham* as to whether a Texas court has personal jurisdiction over a nonresident defendant. Rather, *Cheatham* addresses, among other things, whether the Texas

---

[24] *See also Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 730 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("We do not believe that initiating contract discussions with a Texas resident, and subsequently entering into a contract, in addition to making payment in Texas, are sufficient contacts with Texas when the entire substance of the contract is performed outside the state.").

33

civil barratry statute applies to activity outside of Texas.[25]   That issue has no bearing on our analysis here.  Further, *Cheatham* does not involve a suit against a nonresident company for alleged solicitation of clients on behalf of defendant law firms outside of Texas.   The only parties in *Cheatham* were wrongful-death claimants from Louisiana and Arkansas and their Texas attorneys, whom they sued for barratry.  690 S.W.3d at 325.

Nor are the other cases on which Appellants rely persuasive.  For instance, they rely on *Billingsley Parts & Equip., Inc. v. Vose*, 881 S.W.2d 165 (Tex. App.—Houston [1st Dist.] 1994, writ denied) for the proposition that Velawcity purposefully availed itself of the privilege of conducting business in Texas by "acting as essentially a sales agent for a Texas law firm, receiving payments from that Texas firm, and regularly communicating with that Texas firm."   But in *Billingsley*, the contract at issue provided for the application of Texas law, the record reflected the nonresident defendant first approached the Texas company to solicit work, which led to the contract at issue, and the case involved the Texas company's contractual claim against the defendant.  *See id.* at 169–70.   The Contracts at issue here do not have a choice-of-law clause, the record is silent as to

---

[25]    In citing *Cheatham v. Pohl*, 690 S.W.3d 322 (Houston [1st Dist.] 2024, pet. granted), Appellants argue the merits of their case, which we do not address in a special appearance analysis. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92, 798 (Tex. 2005) (stating special appearance involves consideration of jurisdiction only, not merits or liability).

who approached whom first—Velawcity or MMA—about entering into the Contracts, and the case involves tort claims by Louisiana residents against Velawcity. While Appellants argued in their response that Velawcity signed the Contracts in Texas, the record is silent on that issue.

Appellants' reliance on *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550 (Tex. 2018) also is misplaced. In *Old Republic*, a title insurance company that alleged that transfers between a Texas resident and a Louisiana resident were fraudulent filed suit under the Texas Uniform Fraudulent Transfers Act.[26] *Id.* at 556. Appellants cite *Old Republic* for the proposition that the transfer of "Texas-based assets to an out-of-state defendant" can confer personal jurisdiction because such transfers "derive profit from Texas and create continuing connection[s] with the state." But the Supreme Court in *Old Republic* distinguished the transfer of non-fungible assets from the transfer of money, noting "the mere act of accepting the transfer of money drawn on a Texas bank is 'of negligible significance for purposes of determining whether [a foreign defendant] had sufficient contacts in Texas.'" *Id.* at 564 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17 (1984)). The Supreme Court held Texas courts did not have personal jurisdiction over the Louisiana resident even though she (1) knowingly spoke with a Texas resident at least weekly before the suit was filed; (2) made

---

[26]    TEX. BUS. & COM. CODE § 24.001, *et seq.*

35

eighty-one fund transfers for a total of more than $240,000 to a Texas bank account over four years; (3) knew the funds were going to a Texas resident and Texas-based bank account; (4) held a lien on three vehicles in Texas; and (5) knowingly accepted and deposited sales proceeds from a Texas resident who purchased real property in Texas and transferred it back to her. *Id.* at 560. She argued she had never been a Texas resident, engaged in business in Texas, committed a tort in Texas, and did not maintain a place of business in Texas. *Id.* at 557.

Finally, we distinguish *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009). In that case, Retamco, a Texas corporation, sued Republic Drilling, a California corporation, alleging another Texas corporation involved in the litigation fraudulently transferred Texas oil and gas interests to Republic Drilling, violating the Texas Uniform Fraudulent Transfer Act. *Id.* at 336. Republic Drilling filed a special appearance, which the trial court overruled. *Id.* at 337. The Supreme Court ultimately held that Republic Drilling subjected itself to jurisdiction in Texas. *Id.* In its analysis, the Supreme Court noted that Republic Drilling "purposefully took assignment of Texas real property." *Id.* at 339. The court stated:

> Republic, by taking assignment of Texas real property, reached out and created a continuing relationship in Texas. Under the assignment, it is liable for obligations and expenses related to the interests. This ownership also allows Republic to "enjoy . . . the benefits and

36

protection of [Texas laws.]"  Unlike personal property, Republic's real property will always be in Texas, which leaves no doubt of the continuing relationship that this ownership creates.

*Id.* at 339 (internal citations omitted).  The court noted that the "purchase and ownership of real property" may involve "many contacts over a long period of time," leading to "certain continuing obligations" such as valuation and tax issues and expenses incurred in maintaining the property interests.  *Id.*  Finally, the court concluded that Republic Drilling sought a "benefit, advantage or profit in Texas," as it had the right to enforce warranties and covenants in Texas related to the real property.  *Id.* at 340.[27]  Like *Old Republic*, *Retamco* turned on the transfer of real property, which did not occur in the present case.[28]

Because we conclude that Velawcity did not purposefully avail itself of the privilege of conducting activities in Texas by entering into the Contracts and receiving payments from MMA, and that even if it had, there is no substantial connection between Velawcity's purported contacts with Texas and the operative facts of the litigation, we hold the trial court lacked specific jurisdiction over

---

[27]  As noted, the Texas Supreme Court has drawn a distinction between the transfer of money and non-fungible assets such as real property.  *See Old Republic*, 549 S.W.3d at 563-64 (distinguishing *Retamco* in personal jurisdiction analysis because it "involve[d] the transfer of Texas-based assets to an out-of-state defendant, rather than the transfer of money, a fungible asset").

[28]  The Supreme Court noted that the determining facts in *Retamco* were "the transfers of Texas-based business operations and real property, which derive profit from Texas and create continuing connection with the state."  *Old Republic*, 549 S.W.3d at 564.

Velawcity.

We overrule Appellants' first issue.[29]

**Motion for Continuance**

In its second issue, Appellants argue the trial court abused its discretion in denying their motion to continue the special appearance hearing to allow them to conduct additional jurisdictional discovery. Under Texas Rule of Civil Procedure 120a(3), a trial court may continue a special appearance hearing to allow discovery "[s]hould it appear from the affidavits of a party opposing the motion that he cannot . . . present by affidavit facts essential to justify his opposition[.]" TEX. R. CIV. P. 120a(3).

We review a trial court's denial of a motion for continuance for an abuse of discretion. *See BMC Software*, 83 S.W.3d at 800 ("This Court will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion.") (citing *Villegas v. Carter*, 711 S.W.2d

---

[29] Given our disposition, we need not address the fair-play-and-substantial-justice prong of personal jurisdiction. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 661 n.10 (Tex. 2010). That is because the fair-play-and-substantial-justice analysis "is contingent upon a finding that minimum contacts have been purposefully established." *Commonwealth Gen. Corp. v. York*, 141 S.W.3d 840, 846 (Tex. App.—Corpus Christi–Edinburg 2004), *rev'd on other grounds*, 177 S.W.3d 923 (Tex. 2005). Only after it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state are the contacts evaluated to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).

624, 626 (Tex. 1986)).  An abuse of discretion occurs when the trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law."  *Id.* (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)).

Appellants filed suit on June 21, 2023, and Velawcity filed its special appearance on July 24, 2023.  Appellants responded to the special appearance and filed their alternative request for a continuance seven months later, on February 16, 2024.  Appellants did not explain in their motion why—in the seven months the special appearance had been pending—they had not requested jurisdictional discovery.

During the special appearance hearing, Velawcity opposed the requested continuance arguing that its special appearance had been on file for seven months and Velawcity had not received any request for discovery or stipulations.  Appellants responded they had not engaged in discovery at that point because they were waiting until all the defendants had been served.  At the time of the special appearance hearing, all of the defendants had filed an answer.  Appellants' counsel argued he was about to begin discovery when the special appearance hearing was set.

Appellants explained they wanted to depose Van De Motter to ask him about the Contracts, including the number of communications Velawcity had with MMA

over the eight-month period during which the Contracts were executed, and about Velawcity's business. They argued they would limit the deposition to address jurisdictional issues "with the caveat that . . . if it's a specific jurisdictional issue to establish that they committed a tort in whole or in part in Texas, sometimes you get into the merit of what that tort was."

The trial court held jurisdictional discovery was not necessary "because there's no dispute that the allegedly improperly solicited individuals are not Texas residents. You're basing [jurisdiction] on the contract that says this defendant is an agent of the Texas attorneys." Appellants argued the Contracts formed the main basis of their claims against Velawcity, but that if there were "constant communications going back and forth" between Velawcity and MMA about the alleged barratry, that could give rise to specific jurisdiction "over and above just the contract themselves." Appellants subsequently conceded, however, that "the contract is what gives rise to these barratry claims."

In granting the special appearance and denying the motion for continuance, the court explained:

> [I]t seems that the whole solicitation occurred outside of Texas. The Court would view it differently if Texas residents were called and solicited that would be a different issue. . . . The defendant has no offices in Texas or no regular pattern of doing business. I mean, just the fact that they called this marketing company, the Texas defendants and they entered into a contract but none of the alleged tort[i]ous activity actually occurred in Texas. It occurred in Louisiana when these individuals were solicited. . . . I just don't see why you would

40

need any specific [jurisdictional] discovery when the basis of your argument is the contract which is in evidence.

Given Appellants' argument that the Contracts, which were already in evidence, formed the basis of their specific jurisdiction argument, their lack of an explanation as to how the proposed deposition could establish that Velawcity committed a tort against Appellants in Texas, and in light of their delay in seeking discovery, we hold the trial court did not abuse its discretion in denying Appellants' motion for continuance to discover more information concerning the formation of the Contracts and the parties' communications leading up to the same. *See BMC Software*, 83 S.W.3d at 800–01 (holding trial court did not abuse discretion in overruling objection to special appearance hearing and denying plaintiff's motion for continuance to conduct discovery when hearing was held more than seven months after special appearance was filed and record did not show plaintiff filed motion to compel or otherwise attempted to obtain discovery that defendants refused to provide); *Windsor v. Round*, 591 S.W.3d 654, 669 (Tex. App.—Waco 2019, pet. denied) (holding trial court did not abuse discretion in denying continuance of special appearance to obtain discovery "that far exceeded discovery of jurisdictional facts").

We overrule Appellants' second issue.

41

## Conclusion

We affirm the trial court's order sustaining Velawcity's special appearance and dismissing Appellants' claim for lack of jurisdiction.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.